UNITED STATES, Appellant

v.

CHARLES RICHARD JONES, Seaman Apprentice, U. S. Navy, Appellee

1 USCMA 276, 3 CMR 10

No. 426

Decided April 4, 1952

CDR. Malcom J. Bradbury, USN, for Appellant.
CDR. Raymond W. Glasgow, USN, for Appellee.

PAUL W. BROSMAN, Judge:

This case is before us on certificate of The Judge Advocate General, United States Navy, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(2), 50 USC § 654. The accused was charged with an absence without leave of approximately 44 days and, under two specifications, with negligently missing the movement of his ship in violation, respectively, of Articles 86 and 87, Uniform Code of Military Justice, 50 USC §§ 680, 681. He entered a plea of guilty at his trial by special court-martial; was found guilty; and was sentenced to receive a bad-conduct discharge, to forfeit $30.00 per month for 6 months, and to be confined at hard labor for 6 months. The findings and sentence were approved by the appropriate convening and supervisory authorities. The case was subsequently considered by a board of review in the office of The Judge Advocate General, United States Navy, which set aside the findings and sentence and ordered a rehearing. This action was based on the theory that the substantial rights of the accused were materially prejudiced through failure on the part of the president of the court-martial to instruct regarding an essential element of the offenses alleged in the two specifications of Charge II.

The following question was certified to this Court by The Judge Advocate General, United States Navy:

"Whether error materially prejudicing the substantial rights of the accused, who pleaded guilty to the offenses charged and was duly warned as to the effects of such pleas, was committed by reason of the fact that the President of the special court-martial failed to include in his charge to the court all of the elements of the alleged violation of Article 87, Uniform Code of Military Justice."

After entry of the accused's plea of guilty to all specifications and charges the record reflects that the following colloquy took place:

"PRES: Charles Richard Jones, you have pleaded guilty to the specifications and to the charges. By so doing, you have admitted every act or omission charged and every element of that offense. Your plea subjects you to a finding of guilty without further proof of that offense, in which event you may be sentenced by the court to the maximum punishment authorized for it. You are legally entitled to plead not guilty and place the burden upon the prosecution of proving your guilt of that offense. Your plea will not be accepted unless you understand its meaning and effect. Do you understand?

"ACCUSED: Yes, sir.

"PRES: Understanding this, do you persist in your plea of guilty?

"ACCUSED: Yes, sir."

Thereafter the president instructed the court-martial as to the elements of the offenses charged. In speaking of the two instances of missing movement specified under Charge II, the charge contained the following language:

"The court is advised that the elements of the offense are as follows: . . . That the accused actually missed the movement of a ship, aircraft, or unit with which he was required in the course of duty to move; and that he missed the movement of the ship, aircraft, or unit through neglect."

Article 87, Uniform Code of Military Justice, supra, provides as follows with respect to the offenses alleged under Charge II:

"Any person subject to this code who through neglect or design misses the movement of a ship, aircraft, or unit with which he is required in the course of duty to move shall be punished as a court-martial may direct."

It is evident that the language of the president's charge came directly from the Manual for Courts-Martial, United States, 1951, paragraph 166, subparagraph "Proof," the terms of which are set out below:

**277**

"(a) That the accused actually missed the movement of a ship, aircraft, or unit with which he was required in the course of duty to move; and (b) that he missed the movement of the ship, aircraft, or unit through neglect or design."

Although the mentioned subparagraph makes no specific mention of the requirement of knowledge on the part of the accused of the prospective movement alleged to have been missed, the presence of this element is made explicit in the same paragraph's preceding subparagraph "Discussion," which provides:

"In order to be guilty of the offense, the accused must know, or have cause to know, of the prospective movement which he is alleged to have missed. Knowledge of the exact hour or even of the exact date of the scheduled movement is not required. It is sufficient if the approximate date is known to the accused. However, there must always be a causal connection between the conduct of the accused and the missing of the scheduled movement. Knowledge of the scheduled movement may be proved by remarks made by the accused to others or by testimony that the accused was informed, directly or indirectly, of the prospective movement. For example, proof that the accused was notified of the prospective movement may consist of evidence that he was present at a roll call, muster, or other formation at which the information was given orally. Proof of general knowledge in the accused's organization of the prospective movement of the ship, aircraft, or unit would justify the assumption by a court of the necessary knowledge on the part of the accused."

Likewise, although provisions of paragraph 166, subparagraph "Proof," contain no elaboration of the term "movement," as used in Article 87, supra, the word's content of meaning is explained in the preceding subparagraph "Discussion," mentioned above. This language reads as follows:

"The word 'movement' as used in

Article 87 does not include practice marches which are to be of short duration with a return to the point of departure contemplated, nor does it include minor changes in location of ships, aircraft, or units, as when a ship is shifted from one berth to another in the same shipyard or harbor or when a unit is moved from one barracks to another on the same post."

It thus appears that the president's charge omitted specific reference to the necessity for knowledge of movement, actual or constructive, on the part of the accused in such a case, and failed to define fully therein the term "movement," as used in the punitive Article alleged to have been violated. This constituted error. However, the question remains whether the charge's infirmities materially prejudiced the accused's substantial rights. We do not agree with appellate defense counsel and the board of review that prejudicial error was committed. See Uniform Code of Military Justice, Article 59(a), 50 USC § 646.

We regard the case at bar as within the principle of the Court's decision in United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, decided November 8, 1951, and governed by it. There, as here, the accused pleaded guilty, and firmly adhered thereto after he had been elaborately and fairly apprised by the special court-martial's president of his rights in detail and warned of the definitive legal effect of such a plea. There, however, the president wholly failed to instruct as to the elements of the offense charged, whereas in the present case instructions were, in fact, given, although they are regarded by us as erroneously insufficient. We recognize no basis for distinguishing between the two cases on this point. If the accused was not prejudiced in the Lucas case, neither is he harmed here. In the Lucas case we said:

"A plea of guilty is a confession of guilt and equivalent to conviction. It removes from the trier of the fact any question of innocence or guilt. If the plea is regularly made there remains only the requirement by the

278

court of imposing an appropriate sentence.

. . . . . . .

"It is argued that had the required instruction been given the accused might have possibly changed his plea or the court might have possibly found the accused not guilty. In answering the first contention, the accused was fully apprised of the fact that every element of the offense was proven by his plea of guilty and that a plea of not guilty would place upon the Government the burden of establishing his guilt. He thus knew that innocence could not be presumed; that all doubt of guilt had been removed; that the burden of proof on the Government no longer existed; and that there were no facts upon which the court could find him not guilty.

"The answer to the second contention is that we presume the members of the court would act as reasonable men in considering the case; that had the instructions been given they would perform their duties of returning a verdict consistent with the plea of guilty; and that they could not, without violating their oaths as members of the court, return a not guilty verdict when every element of the offense and every incriminating fact was confessed by the accused in open court after a full and fair explanation."

And later in United States v. Clay (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951, we used the following language in distinguishing Lucas from the case then before the Court:

"We are not here concerned with the questions answered in the Lucas case, supra. *There, the accused pleaded guilty and waived his right to demand the full protective safeguards accorded to him. Cast in the background of a plea of guilty with a full understanding of its consequences, the failure to instruct could not be prejudicial error.* But, not so when the accused insists on his full measure of protection. An accused might waive some of the safeguards thrown around him but the court cannot waive them for him. The members of a court should not force a situation by taking away substantial benefits and then seek to have us justify their act by saying, in effect, 'They are of little value, the evidence is such the court would have found him guilty anyway.'" (Italics supplied)

Since we have no disposition to recede from the views expressed in either Clay or Lucas, it follows that the certified question must be answered in the negative. The decision of the board of review is reversed and the cause remanded to The Judge Advocate General for action not inconsistent with this opinion.

Chief Judge QUINN and Judge LATIMER concur.