UNITED STATES, Appellee

v.

EMMETT A. CHAPUT, Captain, U. S. Army, Appellant

2 USCMA 127, 7 CMR 3

No. 687

Decided January 13, 1953

Lt. Col. James C. Hamilton, U. S. Army, for Appellant.

Lt. Col. Thayer Chapman, U. S. Army, and 1st Lt. Bernard A. Feuerstein, U. S. Army, for Appellee.

### Opinion of the Court

Robert E. Quinn, Chief Judge:

Appellant was tried and convicted by general court-martial on August 20, 1951, for the offense of larceny in violation of Article of War 94, 10 USC § 1566. He was sentenced to be dismissed from the service and to forfeit all pay and allowances. A board of review in the office of The Judge Advocate General of the Army affirmed the findings of guilty and sentence on February 4, 1952. We granted appellant's

petition for review limited to the issue of whether the law officer erred in referring the court to prior board of review decisions and instructing the court to read and use these decisions in their deliberations. The facts, so far as necessary to disposition of the case, are set out briefly below.

In the case at bar appellant was charged with larceny of certain items of military property at the Big Delta Air Force Base, Big Delta, Alaska. Appellant pleaded not guilty to the charge and its specification. The prosecution established that appellant, at the time of the alleged larceny on February 19, 1951, was Motor Officer and Motor Supply Officer for the Arctic Test Branch, Army Field Forces at Big Delta, Alaska, and had made arrangements to furnish a personal trailer to Captain A. R. Chase who was preparing for a trip to the United States. Captain Chase agreed, if possible, to drop off the trailer, two footlockers and some boxes in Eau Claire, Wisconsin, at the address shown thereupon. The footlockers and boxes were on the trailer when the accused turned it over to Captain Chase on February 18, 1951. Captain Chase left Big Delta on February 19, 1951, and upon reaching White Horse, Yukon Territory, Canada, was stopped by an officer of the Royal Canadian Mounted Police and a liaison officer, Captain E. L. Sink, United States Air Force, who took charge of the containers addressed to Mrs. Mary Chaput, 205 Fulton Street, Eau Claire, Wisconsin. An examination of the contents of the containers disclosed, among others, certain items of a type and kind issued for the use of the military service of the United States.

An examination of the trial record discloses that during the course of the conduct of the trial and particularly in closing arguments the question was raised of whether it was incumbent upon the prosecution to competently establish shortages of Government property as one of the elements of the proof required in order to sustain a finding of guilty for the offense of larceny of Government property. This question was argued at length by both trial counsel and defense counsel in their closing arguments. The defense counsel requested that the court be given the following instruction on the issue of proof of shortages:

"To support a conviction of larceny there must be some evidence that the property in question was actually stolen and mere proof of only activity by the accused, under suspicious circumstances involving the various items alleged to have been stolen is not sufficient proof of larceny. If you believe that those items are not missing from the Government stocks you should acquit the accused."

This requested instruction was not delivered to the court. However, the law officer, after giving the court the elements of proof required to support a finding of guilty in conformance with paragraph 187c, Manual for Courts-Martial, United States, 1951, declared to the court:

". . . I am not going to give you any express instructions with reference to whether or not a shortage of Government property must be proven. Instead, I am going to suggest that the members of the court have with them in closed session volume 60 Board of Review reports, page 375 and the first indorsement by the Judge Advocate General to that case; and volume 79 Board of Review reports, page 235. To obtain the full import of the ultimate decisions rendered in those cases it will be necessary to read the facts of those cases carefully and to consider those facts equally as carefully in connection with the ultimate decisions rendered. . . ."

It is with this statement of the law officer that we are concerned. First, we must decide whether this procedure on the part of the law officer was proper. Secondly, if we determine that the law officer's action was improper and constituted error, was such error prejudicial to the substantial rights of accused?

The issue of "shortage" was certainly involved in the case. The crime

128

of larceny necessarily includes the element that property is missing from the owner. To tell the court—as did the law officer here—that, on the one hand, it must be proven that property has been taken from its rightful owner and then, on the other, that a "shortage" of property might not have to be proven, is likely to be confusing. What the law officer meant—we are sure—was to indicate his doubt as to whether a shortage need be established through direct evidence, such as an inventory report. See, e.g., United States v. Evans (No. 143), 2 CMR 113, decided March 10, 1952. He did not, however, make this clear to the court. It was improper for the law officer to acknowledge that such an issue was before the court without explaining to the court the law relative to this issue and bring into view the relations of the evidence adduced to the issues involved. It is our view that this situation was not cured by the law officer's referring the court to the two board of review opinions and giving these opinions to the court to use in their closed session. The instruction, in the instant case, relative to proof of shortage is analogous to the situation where the law officer in his instruction as to elements of an offense refers the court to the Manual, which practice we have repeatedly condemned. See United States v. Welch (No. 196), 3 CMR 136, decided May 27, 1952; United States v. Gilbertson (No. 318), 4 CMR 57, decided July 22, 1952; United States v. Strong (No. 244), 5 CMR 55, decided August 27, 1952. Accordingly, we conclude that the referral by the law officer to the court of the two board of review opinions to determine for themselves the law relative to the necessity for proof of "shortage" was error.

With the determination of the first question in the affirmative, we approach the second question as to whether such error constituted prejudice to the "substantial rights" of the accused. Aside from the element of confusion mentioned above, an examination of the two board of review cases given to the court in the case at bar (United States v. Ranguette, 79 BR 235 and United States v. Klingensmith, 60 BR 375) dis-

closes that in both of these cases we have a factual background similar to the instant case; i.e., the accused in each case was alleged to have committed larceny of Government property, in each case the question of proof of shortage of said property was considered material to the proof of the offense. In the Ranguette case, supra, an Army board of review with one member dissenting affirmed the conviction. In the Klingensmith case, supra, an Army board of review in considering the element of "shortage" concluded the evidence legally insufficient to support the finding of guilty. The Judge Advocate General of the Army, under the then existing regulations, forwarded the records of trial in both cases to the Secretary of War. In the Ranguette case The Judge Advocate General concurred in the majority opinion of the board of review as to the finding of guilty; in the Klingensmith case The Judge Advocate General disagreed with the board of review and recommended that the trial court's finding of guilty be approved. The Under Secretary of War concurred with The Judge Advocate General in both instances. Accordingly, we have a final affirmation of the guilt of the accused in the board of review cases under consideration. We think it self-evident that the minds of the members of the court were confused to say the least, when confronted with the two board of review opinions in which two diametrically opposite conclusions were reached upon facts similar to the case at bar; we further believe that their confusion was compounded by the stress placed on these opinions by counsel in closing arguments. Assuming the members of the court undertook to inform themselves on the law by reading these cases, in accordance with the recommendations of The Judge Advocate General to the Secretary of War to approve the convictions, it is clear to us that the direction of the law officer to the court "to obtain the full import of the ultimate decisions rendered in those cases it will be necessary to read the facts of those cases carefully and to consider those facts equally as carefully in connection with the ultimate decisions rendered" constituted preju-

dicial error under the circumstances of this case. Notwithstanding the fact that the law officer acted and was motivated by what he considered to be the best means to inform the court as to the issue under discussion, nevertheless, the members of the court are not learned in the law and they should not be given the responsibility of reading cases to determine the elements of an offense. It is impossible for us to assess the impact the board of review opinions had on the minds of the members of the court in their deliberations as to the guilt or innocence of appellant. It is fundamental that the only appropriate source of the law ▮ applicable to any case should come from the law officer. See Bird v. United States, 180 US 356, 361, 45 L ed 570, 573, 21 S Ct 403 (1901); United States v. Levy, 153 F2d 995 (CA 3d Cir) (1946); United States v. Max, 156 F2d 13 (CA 3d Cir) (1946). In United States v. Noble, 155 F2d 315, the Court of Appeals, Third Circuit, stated the principle in the following words:

". . . a jury cannot perform its duty of determining the guilt or innocence of a defendant accused of a crime unless they know the essential elements of the crime which he is alleged to have committed. We think it equally self evident that the only appropriate source of that knowledge is the trial judge, whose traditional function has always included that of instructing the jury upon the law. It was because of the failure of the trial judge to give this necessary guidance to the jury that we recently reversed the judgment of conviction in United States v. Levy, 3 Cir, 1946, 153 F2d 995. We deemed the error so fundamental that we took note of it even though the defendant had not requested the instructions."

We conclude that under these circumstances the law officer's instructions constituted prejudicial error and the decision of the board of review is reversed. The record is returned to The Judge Advocate General, United States Army, for rehearing or other action not inconsistent with the views expressed in this opinion.

Judges LATIMER and BROSMAN concur.