UNITED STATES, Appellee

v

CHARLES E. SMITH, Airman,
U. S. Navy, Appellant

12 USCMA 127, 30 CMR 127

Lieutenant Colonel Remmel H. Dudley, USMC, argued the cause for Appellant, Accused. With him on the brief were Lieutenant Colonel R. G. Coyne, USMC, and Lieutenant Leo F. O'Brien, USN.

Lieutenant Commander Raymond O. Kellam, USN, argued the cause for Appellee, United States. With him on the brief was Lieutenant Colonel J. E. Stauffer, USMC.

## Opinion of the Court

HOMER FERGUSON, Judge:

Tried by special court-martial, the accused was found guilty of six specifications of wrongful appropriation by check, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921. He was sentenced to bad-conduct discharge, confinement at hard labor for six months, and reduction to the lowest enlisted grade. With some reduction in the sentence, intermediate appellate authorities affirmed, and we granted accused's petition for for review on the questions whether accused was prejudiced by the participation of the command "legal officer" in the trial and whether the board of review erred both in requiring specific prejudice to be shown to have resulted from the presence of unauthorized persons at closed sessions of the court-martial and in affirming a punitive discharge based upon an incomplete transcript of the proceedings below.

The granted issues all revolve around two similar occurrences in the accused's trial. Initially, a controversy arose when defense counsel objected to the tender in evidence of accused's pretrial statement on the ground that no corpus delicti had been established. After the defense had argued the matter, the following transpired:

"PRES: The court is closed, the

Trial Counsel, Defense Counsel and Legal Officer will remain.

"PRES: The court will come to order.

"TC: All parties to the trial who were present when the court closed are now present.

"PRES: Mr. McClellan, your objection is sustained."

The trial counsel thereafter successfully sought an overnight continuance in order to consult the convening authority and "for legal consultation." After the court-martial had reconvened, trial counsel introduced into evidence certain voluntarily obtained handwriting exemplars which tended to establish that accused wrote the worthless checks involved. Defense counsel objected to the relevancy of the exemplars on the basis that they constituted no more than other "statements" by the accused which could not serve to corroborate his confession. After hearing the objection, the president repeated his earlier action:

"PRES: The court will be closed for five minutes. Trial Counsel and Defense Counsel will remain and bring the Legal Officer in please.

"PRES: The court will come to order.

"TC: All parties to the trial who

were present when the court closed are now present.

"PRES: Mr. McClellan, your objection is overruled."

As it well might, the Government concedes that the participation by the command "legal officer"[1] in accused's trial was patently erroneous. United States v Self, 3 USCMA 568, 13 CMR 124; United States v Guest, 3 USCMA 147, 11 CMR 147. Indeed, the proper rule is that such meddling is presumptively prejudicial. United States v Allbee, 5 USCMA 448, 18 CMR 72; United States v Jakaitis, 10 USCMA 41, 27 CMR 115. It is argued, however, that the prejudice beclouding the unrecorded conferences is dispelled by the presence therein of a legally trained civilian defense counsel and the fact that at least the initial session resulted in a ruling favorable to the accused, whereas all other parties to the trial, including the "legal officer," possessed no qualifications beyond those of the ordinary lay member of the armed services. Cf. United States v Allbee, supra. We believe the Government misapprehends the rationale of our decisions in this area and confuses the overcoming of the presumption of prejudice with the doctrine of waiver.

Initially, we point out that the participation of any unauthorized person in the closed session deliberations of a court-martial is forbidden. United States v Jakaitis, supra; United States v Allbee, supra. When this principle was first announced, we deemed it so essential to basically fair administration of military justice that we held these invasions of the court's closed discussions to be inherently prejudicial. United States v Keith, 1 USCMA 493, 4 CMR 85; United States v Woods, 2 USCMA 203, 8 CMR 3. Upon the belief that the proposition of noninterference in closed sessions had become well established, we subsequently re-examined our previous holdings and concluded that adherence to the mandate of the Code had become sufficiently entrenched to justify a relaxation of the original rule. Thereafter, unlawful participation in the court's processes was, as noted above, held to be only presumptively prejudicial. Reversal followed only in the absence of a clear showing by the Government that the closed conference could not have harmed the accused. United States v Jakaitis, supra.

The reasoning behind these decisions should be apparent to all connected with military justice administration. A court-martial, under the Code, is a judicial body rather than an instrument of command. It sits in judgment between the accused and the United States. To permit a representative of the convening authority to invade its proceedings and to conduct business with it in the secrecy of a closed session, or on the basis of "off-the-record" exchanges, simply divests the court of its judicial character and causes it to revert to its historical status of nothing more than an arm of the commander. In short, when we apply the presumption of prejudice to such proceedings, we mean for the Government to demonstrate the nature of these communications between the court and outsiders. From this, we can determine whether the accused was harmed, a conclusion not always apparent from the mere presence of accused's counsel. To hold otherwise would simply mean that we were invoking the doctrine of waiver with respect to an error which goes to the heart of the military legal system.

Turning to the facts of the instant case, we find that the record depicts two separate unrecorded conferences between the personnel of the court-martial and the convening authority's

---

[1] Counsel for the Government have informed us that the "legal officer" involved was not a lawyer but merely a squadron officer charged with staff duties in connection with military justice. While the interloper's legal qualifications are not shown in the record and, in any event, are immaterial in the disposition of this appeal, we believe much confusion might be avoided if the term "legal officer" were limited to those military personnel who are members of the bar as well as staff officers for military legal matters.

"legal officer." While the first exchange might be held sufficiently explained by the ruling favorable to the defense, we are left in the dark concerning whether advice was given by the "legal officer" to the president concerning the continuance almost immediately granted the trial counsel. More importantly, we are told nothing concerning the second conference which most assuredly resulted in a ruling unfavorable to the defense. For aught that the record shows, the "legal officer" may have acted as *ex officio* law officer to the court-martial and dictated both decisions by the president. Cf. United States v Guest, supra. Suffice it to say that, in the absence of some reliable showing in the record concerning what transpired in these closed conferences, we cannot hold that the prejudice presumed to arise from them has been dispelled. United States v Jakaitis, supra. Accordingly, we must reject the Government's contention and reverse the decision of the board of review.

Our action with regard to the participation by the "legal officer" in the closed conferences of the court-martial renders it unnecessary to reach the other peripheral issues on which we granted review, neither of which, by their nature, can be involved in any proceedings on rehearing.

The decision of the board of review is reversed and the record of trial is returned to The Judge Advocate General of the Navy. A rehearing may be ordered.

QUINN, Chief Judge (concurring in the result):

I concur in the result on the ground that the president of the court abdicated his responsibility in favor of the "legal officer." United States v Self, 3 USCMA 568, 13 CMR 124. It is also appropriate to point out that there is no provision in the Uniform Code for unrecorded side-bar conferences. Indeed, the Code demands that a verbatim record of all proceedings be made as a condition precedent to the imposition of a bad-conduct discharge. Although I am generally unwilling to reverse a conviction because of conduct of a nonlawyer, which could have been prevented by timely objection of a qualified defense counsel, I am not free to ignore the positive mandates of the Congress of the United States.

LATIMER, Judge (dissenting):

I dissent.

I am not willing to allow qualified trial defense counsel to mislead an inferior court by knowingly and willingly engaging in a doubtful proceeding, and then permit his client to profit on appeal by the irregularity. When I say qualified, I am supported not only by his in-court performance but also by defense counsel's own statement to the court-martial when he was interrogated about his qualifications. This is his response to a question concerning his fitness to represent the accused:

"The legal qualifications of the appointed members of the defense are correctly stated in the appointed, appointing order. The legal qualifications of individual counsel are as follows: I am a lawyer in the sense of Article 27 of the Code. I was an Air Force officer, certified under Article 26 as a law officer and also under Article 27 of the Code. I'm a member of the Bar of the state of New Mexico and the state of Kansas. I have acted in several Federal Courts and I am licensed to practice in the Ryukyus Islands. I've had extensive experience in the area of military justice."

With that wealth of experience, I can hardly imagine that this defense counsel was uninformed on correct procedure and the necessity of saving errors to be asserted on appeal. Moreover, the record reflects he was no novice. He exercised a peremptory challenge, made a motion for dismissal for lack of speedy prosecution, argued a number of points of law extensively, registered at least seventy objections, of which sixty-one were sustained— some improperly, he made a number of collateral motions, took exceptions to the entire Charge and submitted an additional instruction. Actions such as those bespeak familiarity with the trial of cases.

To prevent any misunderstanding and to make certain I do not hereinafter unfairly characterize him, I first direct attention to the fact that he is not counsel on appeal and he is in no way responsible for raising the issue before us. Further, I should make it clear that I do not contend he was deliberately unscrupulous. On the contrary, I believe he was an expert in the trial of court-martial cases and, knowing he was opposed by amateurs, he was content to let this special court-martial flounder in its own mistake. The best way I can illustrate his attitude is to quote an observation made by him:

"This series of questions has been factfully objectional on several grounds but I'm not going to object to this witness to see just how far out of line. . . . I'm interested to see just what counsel will do here. He can lead, he can do whatever he wants, now I would just like to see what happens to this case."

With the prologue completed, I move on to consider the two incidents which give rise to this controversy. The first impropriety arose at the time trial counsel offered accused's pretrial confession into evidence. Individual defense counsel objected on the grounds that the *corpus delicti* of larceny had not been established. After extended arguments which seem to have fully covered the issue, the president made this announcement: "The court is closed, The Trial Counsel, Defense Counsel and Legal Officer will remain." When court opened, the president announced that the objection was sustained. It is significant to note that defense counsel, who more than once had raised the spectre of the court-martial being reversed on appeal if his views were not adopted, was significantly silent about the closed-court proceedings, and I have every good reason to believe was quite well pleased with the very favorable but questionable ruling.

The second incident grew out of an attempt by trial counsel to introduce handwriting exemplars of the accused. Defense counsel objected again on the ground that the *corpus delicti* had not been established. So far as I can understand the objection, it is entirely devoid of merit. In all events, the president again closed the court with trial and defense counsel and the legal officer present in the closed session. Being fully apprised by the announcement made that this was to be a repeat performance, defense counsel did not object to participating. Neither did he complain when court reconvened and announced that the objection was overruled.

I, of course, do not know what was discussed during the two short recesses. However, if I speculate in favor of the accused, I would infer that there were further legalistic arguments and voting on the merit of defense counsel's objections. But I am certain that defense counsel knew what transpired, for he was present at all times. Had he thought the off-the-record proceeding was of any importance to the accused or that it would aid on appeal, I am certain he would have requested the presence of a reporter. In view of his other successes, an insistence on that right would have been readily complied with. Significantly, he made certain that all other possible errors on appeal were made a part of the record and had there been action taken on the two questioned occasions which could have possibly prejudiced a substantial right of the accused, it would be before us now.

The author of the principal opinion relies heavily on our prior cases which discuss the doctrine of the participation of unauthorized persons in secret sessions of the court-martial. Those cases are inapposite for the obvious reason that counsel for the defense was excluded and there was evidence that the law officer participated in the proceedings. Moreover, those were secret deliberations in which the guilt or innocence of the accused was being decided and those sessions are jealously protected from strangers. Here secrecy might be objectionable, the issue was on an interlocutory question, and both sides were proper in-

**131**

vitees. While this may not be an exact analogy, the proceedings here adopted were in the nature of the civilian sidebar conferences in which both counsel are consulted but the discussion is not spread on the record. Undoubtedly, the Chief Judge is on solid ground when he states there is no provision in the Code for conferences of that sort. However, I might suggest that the United States and state statutes are probably silent on the form of procedure, yet the practice is well-recognized in civilian practice and not likely to be considered by an appellate court absent some protest by the defendant at the time.

One further principle stressed by the Chief Judge bears answering. He refuses to invoke waiver because of a positive mandate from Congress. In that connection, I merely point out that we have imposed that doctrine in cases not only involving other specific commands of Congress but in instances when the Constitution has commanded courts to guarantee rights to accused persons. By way of illustration only, I mention cases in which we have held the accused waived his right against self-incrimination, Article 31 and the Fifth Amendment to the Constitution; the privilege of pretrial investigation, Artcle 32; the disqualification of a law officer, Article 26; the right to counsel, Article 27 and the Sixth amendment to the Constitution; and right of confrontation, Sixth Amendment to the Constitution. Furthermore, in this connection I believe the Chief Judge's language in United States v Wolfe, 8 USCMA 247, 24 CMR 57, which involved the reception of evidence in the absence of the accused and his counsel, is appropriate. In that case, he wrote for the Court:

"A criminal trial is not a guessing game. An accused, alike with the Government, must deal fairly with the court. He cannot withhold information of matters affecting the trial on the chance that they may have a favorable effect, and then, when disappointed, complain. Even rights guaranteed by the Constitution are considered surrendered when the accused knowingly declines at the trial to avail himself of them. United States v Holton, 227 F2d 886 (CA 7th Cir) (1955), cert den 350 US 1006, 100 L ed 868, 76 S Ct 650; United States v Fisher, 4 USCMA 152, 15 CMR 152."

And again in United States v Walters, 4 USCMA 617, 16 CMR 191, he joined in a concept expressed in this language:

"We have no hesitancy in accepting the view that—if he has knowledge thereof—a defense counsel must come forth promptly, and prior to findings, with any contention that the court-martial has transacted some of its 'business' outside the normal course of its functioning, and without the presence of all of its members, trial and defense counsel, the accused, the reporter, or some one or more of them. Certainly we do not propose to permit defense counsel to remain silent and to speculate cunningly as to a court's findings, if he has knowledge of facts suggesting that the court engaged in 'proceedings' during a purported recess or adjournment. United States v Thomas, supra."

To make my position clear, I do not labor under the belief that a learned defense counsel must assist a special court-martial to the detriment of the accused, for the Government must be responsible for the deficiencies of its own representative. But I do insist that he owes a duty to a trial court and to this Court to point out errors of omission or commission when to do so will protect his client at the lower level and on appeal. If he tries to be sly and adopts the philosophy of letting a prosecutor hang himself, he must accept the risk of remaining silent. If he covertly joins in the hanging, he is not entitled to complain about the execution.

To cover the remote possibility that someone might conclude it was unfair to charge the accused with the delict of his own chosen defense counsel, I merely say that we are not concerned here with inadequacy of counsel, and I find no reason to give the accused a

second chance to avoid conviction. He was very well represented at the trial and has been at all appellate levels. Since the verdict was returned, no one has had the temerity to suggest that the evidence of guilt is not overwhelming, and well they could not for, aside from the Government's evidence which was not rebutted by any defense testimony, the accused executed a voluntary pretrial confession. Accordingly, imposing a waiver of the right to raise this error on appeal could not possibly result in a miscarriage of justice.

I would affirm the decision of the board of review.