UNITED STATES, Appellee

v

JOSEPH S. BRUCE, Boatswain's Mate Third Class,
U. S. Navy, Appellant

12 USCMA 410, 30 CMR 410

No. 14,738

Decided June 2, 1961

*Captain John P. Gibbons*, USN, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel R. G. Coyne*, USMC.

*Major Elvin R. Coon, Jr.*, USMC, argued the cause for Appellee, United States. With him on the brief was *Captain Warren C. Kiracofe*, USN.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A special court-martial in Japan convicted the accused of violation of a general order regarding the possession of ration cards of the Far East Exchange and wrongful use of narcotics in violation, respectively, of Articles 92 and

134, Uniform Code of Military Justice, 10 USC §§ 892, 934. We granted review to consider whether two unrecorded conferences between the president of the court and trial counsel prejudiced the accused.

At trial the accused was represented by appointed military counsel and individual civilian counsel. The case was closely contested. At the end of the prosecution's case, individual defense counsel moved for a mistrial. He said that "sometime yesterday" he recalled seeing trial counsel engaged in a conversation with the president of the court during a recess of the court, and he heard "something about . . . the law in this case." He also observed trial counsel walk to the counsel table and put down some papers which appeared to relate to the discussion between trial counsel and the president. Later, he learned these were "requested instructions." Individual counsel's immediate reaction to what he had seen was to go outside the courtroom with appointed defense counsel and "figuratively speaking, hit the ceiling." The defense lawyers, however, determined "not to do anything" because it appeared to them that the court was fair and they thought it best "to say nothing" about the matter and let "it go." A second incident, however, forced the defense to reconsider. After a recess, on returning to the courtroom a little early, defense counsel again found the president sitting "alone up there" with trial counsel. Again they heard some discussion about the case and "you should not concern yourself with this and that." Defense counsel were convinced there was "hardly anything more improper" than such a conference. In view of the repetition of the incident they felt constrained to move for a mistrial. Replying to the motion, trial counsel insisted he had done nothing wrong. He contended it was part of his duty to assist the president in the preparation of the instructions and there was nothing legally objectionable in his conduct. Apart from the reference to assistance in the preparation of the instructions, trial counsel did not comment on, or offer to disclose, the nature or the substance of his conferences with the president. At the conclusion of trial counsel's remarks, the president made the following ruling:

"PRES: Subject to the objection of any member of this court I am denying the motion for a mistrial presented by Defense Counsel. In addition and for the record I want to put in to the record that the discussion between the Trial Counsel and myself concerned strictly instructions that were to be presented to the members of this court, that's all. You may proceed."

As early as United States v Keith, 1 USCMA 493, 4 CMR 85, we pointed out the impropriety of, and the danger of prejudice in, private conferences between court personnel. Since then we have repeatedly warned against the practice, and in a number of cases reversed the accused's conviction because of the risk of prejudice to him. In United States v Randall, 5 USCMA 535, 18 CMR 159, we expressly described as "flagrant" error the holding of "private . . . colloquys between the president [of a special court-martial] and trial counsel." A trial counsel, as the prosecutor at the trial believed, can indeed be called upon to "produce any law available" on a particular legal matter, including instructions, but his assistance must be called for and provided in the presence of the defense so that it can interpose objections or make recommendations of its own. Manual for Courts-Martial, United States, 1951, paragraph 73a, c(2); The Law Officer, Military Justice Handbook, Department of the Army Pamphlet No. 27–9, paragraph 70 (1958); see also United States v Ransom, 4 USCMA 195, 15 CMR 195.

A private discussion about the case between trial counsel and the president of the special court-martial is presumptively prejudicial. United States v Solak, 10 USCMA 440, 28 CMR 6; United States v Randall, supra. Not only is the president the presiding judge, but he is also a voting court member. An unrecorded conversation between the prosecuting attorney and a

**411**

juror would, as Judge Brosman observed in United States v Self, 3 USCMA 568, 13 CMR 124, "be regarded as shocking by civilian professional thinking." That was exactly civilian counsel's reaction in this case; it will be recalled that he said he "hit the ceiling" when he walked in on the first conference. Unquestionably, therefore, trial counsel and the president erred in holding private discussions about the case. The board of review below so held; and the Government on this appeal concedes the error. They conclude, however, that the error did not prejudice the accused. We reach a different conclusion.

The presumption of prejudice in a case of this kind can be overcome only by a "clear and positive showing that . . . [the private conference] did not and could not operate in any way to influence the decision." United States v Solak, supra, page 444. Here, rather than disclose fully the content of his private discussions with the president about the case, trial counsel insisted he had an absolute right to engage in them. Inferentially, he suggested that the discussions related to instructions to be given to the court members. Similarly, the president denied the motion for a mistrial, without first disclosing the substance of the discussions. True, after his ruling he noted "for the record" that the conferences "concerned strictly instructions." However, he did not deny defense counsel's reference to the fact that, in at least one of the conferences, trial counsel had papers containing proposed instructions. The record of trial gives no indication of the substance of these proposals. For all that appears, the proposed instructions may have been based upon the prosecution's interpretation of the evidence, and contained references to this evidence. The proposed instructions may not have been given but the marshalling of the evidence in the proposals could well have influenced the president, and through him, the other members of the court in their closed session deliberations on the accused's guilt or innocence. Unlike the law officer of a general court-martial, the president of a special court-martial is a member of the court-martial and deliberates in closed session with the other members. Unrecorded or sidebar conferences with him should be avoided. See United States v Smith, 12 USCMA 127, 30 CMR 127, concurring opinion by Chief Judge Quinn; cf. United States v Ransom, supra. We repeat here what we said in United States v Vaughan, 3 USCMA 121, 128, 11 CMR 121:

". . . Surely, what we have before us is much less than a transcript of the proceedings in question. Because of this, it cannot be said that there was no fair risk of prejudice—that is, *specific* prejudice—to the accused. It is clear that the Government did not sustain any burden which may have rested on its shoulders to establish that what transpired during the closed conference did not operate to accused's detriment."

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Judge FERGUSON concurs.