UNITED STATES, Appellee

v

WILLIAM R. FORWERCK, Private First Class,
U. S. Army, Appellant

12 USCMA 540, 31 CMR 126

No. 15,161

November 24, 1961

*Captain Samuel J. Rozel* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod* and *First Lieutenant Jerome D. Meeker.*

*First Lieutenant Alvin B. Fox* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Major Francis M. Cooper,* and *First Lieutenant Jerome Nelson.*

Opinion of the Court

QUINN, Chief Judge:

This appeal brings up for review the effect of certain instructions by the law officer.

Three accused, Private J. A. Wiggington, Private First Class W. R. Forwerck, and Sergeant R. Vazquez-Davila, were, at the same time, brought before

**541**

a general court-martial convened at Fort Devens, Massachusetts. Wiggington and Forwerck were represented by the same appointed defense counsel and assistant defense counsel; Vazquez-Davila was represented only by appointed defense counsel. All accused were present for the preliminary proceedings from certification of the legal qualifications of counsel to the taking of the oath by the trial personnel to perform faithfully their respective duties. According to the record of trial in this case, Forwerck and Vazquez-Davila were excused from the courtroom at 8:16 a.m. and the proceedings continued against Wiggington on the charges against him. At 10:30 a.m. the court was "convened for the trial" of this accused, with the notation that all persons "present at the original convening of the court, are now present." See Manual for Courts-Martial, United States, 1951, Appendix 8a (Procedure for Trials before General and Special Courts-Martial), page 505.

Arraigned on five specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, the accused entered a plea of guilty. The meaning and effect of the plea were fully explained to him, and, in an out-of-court hearing before the law officer, he represented the plea was voluntary and that he in fact committed "five separate larcenies." When court reconvened in open session, both sides rested immediately without the introduction of any evidence. The law officer then gave the following instruction:

"LO: I will ask the court to recall my instructions on the effect of a guilty plea standing before the court, as given in the case of the United States versus Wiggington earlier this morning. I will recall your attention to the fact that a guilty plea, standing before the court, leaves no issue to be resolved as to the guilt or innocence of the accused, but the Code requires that the court make its findings in closed session and upon secret written ballot, regardless of the fact that the accused has pleaded guilty.

"There being eight of you now present, the requirement that two-thirds concur will not be met unless at least six concur.

"The court will be closed."

In due course the court returned findings of guilty of all specifications. Before it retired to consider the sentence, it was instructed as follows:

"LO: The court is advised that the maximum punishment that may be imposed is as follows: As to Specifications 1, 3, 4 and 5 the maximum punishment is: Dishonorable discharge, total forfeitures, and confinement at hard labor for one year. As to Specification 2, the maximum punishment is: Dishonorable discharge, total forfeitures, and confinement at hard labor for five years—making the total maximum punishment which may be imposed for the offenses of which this accused has been found guilty: Dishonorable discharge, total forfeitures, and confinement at hard labor for nine years.

"I will ask the court to recall my general instructions on sentence matters as given in the case of the United States versus Wiggington, earlier this morning. I will remind you that any sentence in this case requires the concurrence of two-thirds of the members present at the time the vote is taken, and now that the court is comprised of eight members, the requirement that two-thirds concur will not be met unless at least six members concur.

"I ask that the court recall my instructions that it should consider all matters in extenuation and mitigation, whether offered before or after the findings, and that the court may consider a plea of guilty as a matter in extenuation and mitigation, in that time, effort and expense are normally saved the Government by such a plea, and it may indicate repentance or first step toward rehabilitation."

No objection to the instructions was made by defense counsel, and in response to a question by the law officer, he said he had no requests for further instructions. However, on review of the case before the board of review the

accused contended he was prejudiced by the law officer's references to the instructions given in the Wiggington case. That contention divided the board of review, with the majority concluding there was error but no prejudice.

Before this Court the Government concedes that the law officer erred in "incorpora[ting] by reference" the instructions he gave in the Wiggington case, but it denies the error had any adverse effect upon the substantial rights of the accused. Conversely, the accused contends the error deprived him of the right to be present during all stages of the trial; the right to adequate appellate review; the right to a separate and complete record of trial; and, finally, that the record of trial is not verbatim, and, therefore, his senence cannot include a punitive discharge.

So far as the right to be present at all stages of the trial and the right to a complete and verbatim record is concerned, the accused and his counsel were undeniably present during all the proceedings and everything said and done at the trial appears in the transcript of the record. Specifically, the references to the Wiggington instruction were made in their presence, and the accused and his counsel had full opportunity to object or to request that the Wiggington instructions be reiterated in their entirety. It is, therefore, as the Court of Appeals for the Third Circuit in a similar situation said: "sophistical to argue . . . that because the trial judge in his charge incorporated by reference [instructions to the same jury which were given in other cases, the defendant] . . . was not present at this stage of his trial." United States v Burke, 197 F2d 856, 858 (CA 3d Cir) (1952). In our opinion, the accused was not deprived of his right to be present during all the proceedings against him and the record of trial is full and complete.

What is really the issue is whether the references to the instructions in the Wiggington case provide a proper instructional framework for the court-martial's consideration of the matters upon which depended the life and liberty of this accused. That issue was decided by us as early as United States v Gilbertson, 1 USCMA 465, 4 CMR 57. We held in that case that it is error to refer the court-martial to other sources for the rules of law to be applied to the case under consideration. We pointed out, among other things, that instruction by reference to other sources carries no guarantee the court members will actually make the necessary reference, and that the reviewing authorities are "handicapped in ascertaining the legal standard applied by the court in its deliberations." See also United States v Boswell, 8 USCMA 145, 23 CMR 369; United States v Chaput, 2 USCMA 127, 7 CMR 3.

As we indicated earlier, the Government concedes error. However, it advances several reasons which it contends justify disregard of the error and affirmation of the accused's conviction. First, it maintains the error was waived since the accused and his counsel were present and accorded full opportunity to object to the instruction by reference. Our opinion in United States v Lowry, 4 USCMA 448, 16 CMR 22, clearly indicates the principle of waiver may be applied in an appropriate case to a situation of this kind. The Court of Appeals for the District of Columbia specifically applied the doctrine in Mundy v United States, 176 F2d 32 (1949). In that case the trial judge instructed the jury on reasonable doubt as follows:

"'You understand what I mean when I say "reasonable doubt."

"'The Court has instructed you on reasonable doubt many, many times, and of course, if you have a reasonable doubt as the Court has explained that term to you, in this case you must resolve that doubt in favor of the defendant and acquit him.'"

On appeal the Court of Appeals sustained the accused's conviction on the ground that he had waived the error in the instruction. In part it said:

"The appellant's silence at the

**543**

bench was a waiver of the court's omission of a definition of reasonable doubt. It is true we have sometimes noticed an error in a serious criminal case, despite the appellant's waiver, if we regarded it as having manifestly prejudiced the appellant. But the jurors who found Mundy guilty were obviously familiar with the meaning of reasonable doubt, so that it is unlikely any prejudice resulted from the court's failure to repeat the definition. But aside from this, the case is not one in which a disregard of the rules should be condoned. To this we add that we regard it as better practice to define the term in each case no matter how experienced the jurors may be." [Accord, United States v Burke, supra.]

Here, as in the *Mundy* case, there is no indication that application of the waiver rule would result in a miscarriage of justice. The sentence adjudged by the court-martial is less than a fourth that of the maximum for the offenses found. We hold, therefore, that the error in the instruction was waived at the trial. Even from a substantive standpoint, however, there is no merit to the accused's claim of prejudice.

The fundamental question in a case of this kind is: Did the instruction, authorizing the court members to refer to a source other than the trial instructions for rule of law applicable to the case, prejudice the accused? United States v Chaput, supra; see also United States v McQuaid, 9 USCMA 563, 567, 26 CMR 343.

Before the board of review, the accused conceded that in view of his plea ▮▮▮▮▮▮ of guilty to all specifications of the charge, the error "was not prejudicial" as to the findings of guilty. The concession was not repeated in this Court. On the contrary, in the petition for grant of review and his final brief under Rule 43, the accused insists the error requires reversal of both findings and sentence. As to the findings, United States v Cruz, 10 USCMA 458, 23 CMR 24, stands squarely opposed to the accused's present contention. In

**544**

that case we held that since a plea of guilty is the equivalent of a conviction, it is not prejudicial error to omit instructions on the elements of the offense and other principles of law required by Article 51 of the Uniform Code. 10 USC § 851. The plea of guilty also precludes the possibility of prejudice if erroneous instructions are given. United States v Jones, 1 USCMA 276, 3 CMR 10. It follows, therefore, that in view of the plea of guilty here, the findings of guilty could not be affected by the content of the instructions in the Wiggington case, or by the possibility that one or more of the court members did not recall those instructions or remembered them incorrectly. Cf. United States v Caldwell, 11 USCMA 257, 29 CMR 73.

That brings us to the sentence. The accused contends that the reference to the instructions in the Wiggington case is substantially the equivalent of a "closed conference" between the law officer and the court-martial. See United States v Moeller, 8 USCMA 275, 24 CMR 85. We suppose the situation can also be likened to a private communication with court members on a matter relevant to the issues. See United States v Lowry, supra. Since the general principles applicable to both situations are the same, either analogy may be accepted for the purposes of this appeal. In both cases, the starting point is the presumption of prejudice which arises from a showing that a closed conference or a private discussion about the case was held with the court members. United States v Allbee, 5 USCMA 448, 18 CMR 72; United States v Bruce, 12 USCMA 410, 30 CMR 410.

The presumption of prejudice arising from an unsanctioned closed conference or a private discussion ▮▮▮▮▮▮ cussion with the court members is a rebuttable one. Clear and convincing evidence may show that nothing said or done in the prohibited exchange was detrimental to the accused. United States v Bruce, supra; United States v Jakaitis, 10 USCMA 41, 27 CMR 115. The burden of making the necessary showing rests upon the Government. United

States v Erb, 12 USCMA 524, 31 CMR 110.[1]

Counsel for the Government contend the burden was met and, in fact, the accused was not "in anyway prejudiced." It urges us to end the litigation in what it calls the "common sense way"; that is, to look at the record in the Wiggington case, from which the Government maintains it will be immediately evident that the sentence instructions were completely accurate, and, so, could not have harmed the accused if used by the court-martial in their deliberations on his sentence. The suggestion has appealing simplicity since the Wiggington record of trial has unquestioned authenticity. However, the record of the Wiggington case has never been, and is not now, before us. In the past, we have not been disposed to take judicial notice of a particular part of the proceedings in the trial of another case the record of which has never been before us. United States v Dickenson, 6 USCMA 438, 20 CMR 154; cf. United States v Moore, 9 USCMA 284, 26 CMR 64. While we acknowledge the persuasiveness of the Government's argument, at least insofar as it applies to a situation in which the problem is to ascertain only what was in fact said in the Wiggington case, we prefer to leave to another time reexamination of the limits of judicial notice on appellate review. See United States v Lovett, 7 USCMA 704, 708, 23 CMR 168. We can, however, look to the accused's own record to see if there is sufficient evidence to overcome the presumption of prejudice. United States v Erb, supra; United States v Bruce, supra.

A fair idea of the nature of the Wiggington instructions is readily obtainable from the instructions here. The first reference is to "general instructions on sentence matters." From what follows it is clearly inferable that the general instructions concern voting procedures and the number of votes required to adjudge a sentence. The second Wiggington instruction, the court was asked to recall, was that it should "consider all matters in extenuation and mitigation." It is arguable that this instruction is actually a complete repetition of the one given in Wiggington, or at least a very substantial paraphrase of it. Whether it is one or the other is unimportant. The language of the Wiggington instructions may not be exactly known, but the subject-matter is reasonably well-defined. See United States v Erb, supra.

There is no room to conclude that the "general instructions" on voting were wrong, because they were expressly modified to conform to the specific composition of the court-martial which tried this accused. There is, therefore, no fair risk that the court-martial was misled by conflicting advice. United States v Noe, 7 USCMA 408, 22 CMR 198. As to the mitigation instruction, whatever its phraseology, it could be nothing but beneficial to the accused. The record itself, therefore, clearly and convincingly overcomes the presumption of prejudice arising from the improper reference to the instructions in the Wiggington case. Accordingly, we affirm the decision of the board of review.

Judge KILDAY concurs.

FERGUSON, Judge (dissenting):

I dissent.

In my opinion, the positive command

---

[1] The language of the opinion of the majority of the board of review below suggests that it may have disregarded the presumption of prejudice and placed upon the accused the burden of showing the existence of prejudice. Thus, in the last paragraph of its opinion, it says: "While the law officer erred, . . . he actually gave adequate instructions in the case at bar and *there was no showing of prejudice*." (Emphasis supplied.) From the quotation, it would also appear the board of review overlooked the fact that the correctness of the instructions set out in the record of trial does not necessarily guarantee the correctness of the Wiggington instructions, which the court was also directed to consider. If the latter were incorrect in material part, reversal of the sentence might be required. United States v Noe, 7 USCMA 408, 22 CMR 198.

of Congress that "Each general court-martial shall keep a separate record of the proceedings of the trial of each case brought before it" was violated by the law officer's action in this case. Uniform Code of Military Justice, Article 54, 10 USC § 854. Moreover, I am of the view that the contents of the instructions which he sought to incorporate by reference may not be determined from the record before us.

In each of these cases, the accused pleaded guilty and was found guilty. Following proceedings in mitigation and extenuation, the law officer, Lieutenant Colonel Carmody, delivered substantially similar instructions to the members of the court-martial. The following is a typical example:

"I will ask the court to recall my general instructions on sentence matters as given in the case of the United States versus Wiggington, earlier this morning. I will remind you that any sentence in this case requires the concurrence of two-thirds of the members present at the time the vote is taken, and now that the court is comprised of eight members, the requirements that two-thirds concur will not be met unless at least six members concur.

"I ask that the court recall my instructions that it should consider all matters in extenuation and mitigation, whether offered before or after the findings, and that the court may consider a plea of guilty as a matter in extenuation and mitigation, in that time, effort and expense are normally saved the Government by such a plea, and it may indicate repentance or first step toward rehabilitation."

As noted above, Code, supra, Article 54, requires each general court-martial to keep a complete and separate record of the proceedings in each case. Moreover, Code, supra, Article 39, 10 USC § 839, provides:

"When a general or special court-martial deliberates or votes, only the members of the court may be present. After a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the

court to put the findings in proper form, and those proceedings shall be on the record. *All other proceedings, including any other consultation of the court with counsel or the law officer, shall be made a part of the record and shall be in the presence of the accused, the defense counsel, the trial counsel, and in general court-martial cases, the law officer."* [Emphasis supplied.]

In United States v Walters, 4 USCMA 617, 16 CMR 191, we were confronted with the question of unrecorded communications between the law officer and court members during recesses and adjournments. With respect to these as a part of the record, we stated, at page 627:

"The episodes presented in the certificates all occurred during recesses or adjournments of the court-martial which tried the accused—and quite clearly were outside the knowledge of the court reporter. *If Congressional intent in requiring a full review of the record is to be accorded any sort of meaning, we cannot condone the defeat of that purpose through permitting a court to receive evidence or instructions 'off the record' during a period of nominal recess or adjournment.* If, unhappily, the court-martial or some of its members, either intentionally or through inadvertence, are permitted to hear testimony, or to obtain legal advice, during a purported recess, such matters must be deemed part of its 'proceedings' and should be reported in the record of trial. *In sum, we interpret the 'proceedings' of such a body to include any sort of conference at which the court-martial carries on its business of obtaining the facts and the law applicable to the evidence before it—this although such a conference does not purport to constitute a part of the formal functioning of the tribunal."* [Emphasis supplied.]

And in United States v Lowry, 4 USCMA 448, 16 CMR 22, we stated, at page 452:

". . . Apparently to support his instructions, he [the law officer] pro-

vided the court with a list of cases. The record is silent on when and how the cases were given to the court, and what the citations were. From the law officer's remarks and the affidavit of the court member, it would seem that they were dictated orally and related to the offenses of maiming and the lesser included offenses of aggravated and simple assault. But, this information does not solve our problem. *The cases plainly were intended as part of the instructions. A record which does not contain all of the instructions is clearly deficient in a vital part. United States v Whitman, 3 USCMA 179, 11 CMR 179.*" [Emphasis supplied.]

In United States v Rinehart, 8 USCMA 402, 24 CMR 212, we condemned the practice of permitting use of the Manual for Courts-Martial, United States, 1951, by court members. In the course of that opinion, we stated, at page 409:

". . . Regardless of the extent of legal knowledge of the court members, an accused is entitled to know what law is being applied. Sometimes mistakes are made. See United States v Berry, 6 USCMA 609, 20 CMR 325. *When they are made, they should appear in the record so that they can be corrected on appellate review.*" [Emphasis supplied.]

See also United States v Caldwell, 11 USCMA 257, 29 CMR 73.

The underlying principle to be gleaned from the foregoing opinions of the Court is that all proceedings in connection with a particular trial, including advice on legal principles, constitute the "record" within the meaning of Code, supra, Articles 39 and 54. United States v Walters, supra. When the law officer seeks to incorporate instructions by reference to other sources, the reference becomes a part of the proceedings, and its absence from the transcript renders the record incomplete. United States v Lowry, supra. In short, it was Congress' intent to provide a complete and separate recital of all matters occurring at each trial in order that errors might be corrected on review. United States v Rinehart, su-

pra; United States v Caldwell, supra. When the law officer or court member goes to sources not set forth in the transcript, the Congressional mandate is violated and the record is incomplete.

Here, the law officer sought to incorporate his instructions to the court members in the Wiggington case simply by referring to the fact that he had there advised the members generally with regard to the sentence. We have no way of knowing what he said, for we cannot judicially resort to the transcript of that trial. United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Lovett, 7 USCMA 704, 23 CMR 168. It seems clear that his incorporation made the Wiggington instructions as much a part of the proceedings here as the analogous list of cases in *Lowry,* supra, or the Manual in *Rinehart,* supra. Thus, when those instructions were not set forth in the transcript before us, the record became incomplete. United States v Walters, supra.

The principal opinion dismisses the claim of inadequacy of the record as " 'sophistical' " and points out that the accused and his counsel were both present and had the opportunity to have the instructions repeated verbatim in this case. With respect to the sophistry, I merely point again to the precedents cited above and, concerning the duty of the accused or his counsel to require reiteration of the Wiggington advice, one need advert only to our language in United States v Walters, supra, at page 634:

"The second objectionable phase of the January 21 incident centers on the discussion of German tax laws. Here too it is noteworthy that defense counsel was present throughout the colloquy. It can be argued, therefore, that, if misconceptions of law were created, the situation might easily have been rectified at a later time—and prior to findings—through a request for contrary instructions. *However, we are inclined to believe that the giving of instructions in open court constitutes so fundamental a part of the Uniform Code's frame-*

**547**

*work that a departure does not become insignificant merely because defense counsel might later be entitled to request a correct charge. See United States v Lowry, 4 USCMA 448, 16 CMR 22.*" [Emphasis supplied.]

The second area in which I separate from my brothers is in connection with their treatment of the effect of the law officer's erroneous incorporation by reference of his instructions in the Wiggington trial. Noting that his action was presumptively prejudicial, they find the aura of harm dispelled by their interpretation of the reference as having involved general instructions on voting procedures and the effect of matters in mitigation and extenuation. In short, the principal opinion concludes that the law officer referred the court members to his instructions in Wiggington and followed with a substantially verbatim repetition of the principles he stated in that record.

We are all agreed that instruction by reference is erroneous. Indeed, the Government properly concedes the law officer erred. We have continuously so held since our decision in United States v Gilbertson, 1 USCMA 465, 4 CMR 57. See United States v Chaput, 2 USCMA 127, 7 CMR 3; and United States v Rinehart, supra. And prejudice is shown when we are unable to determine the nature of the instructions. As we said in the *Gilbertson* case, at page 468:

". . . If full instructions are not given in open court, defense cannot evaluate their correctness and has no opportunity to object. Further, if no affirmative statement of the instructions appears in the record, reviewing authorities are handicapped in ascertaining the legal standard applied by the court in its deliberations on the findings."

True it is in the record before us that Colonel Carmody specifically asked the court members to "recall" certain instructions regarding the requirement that two-thirds of the members present must concur in order to reach a sentence and that they should consider all matters in mitigation and extenuation, particularly the fact that accused

**548**

pleaded guilty. It does not follow at all, however, that these were the "general instructions on sentence matters" given in the Wiggington trial to which he also referred. Rather, it would appear from his language, quoted above, that he intended to call the members' attention *both to the general instructions which he had given and to the particular matters which he thereafter mentioned.* Indeed, I am simply at a loss to determine the logical process which permits one to infer that these "general instructions" covered the same subject matter which the law officer expressly set forth. Yet, this is said to be so clear and convincing that a presumption of prejudice is overcome. United States v Jakaitis, 10 USCMA 41, 27 CMR 115; United States v Allbee, 5 USCMA 448, 18 CMR 72. With this speculation, I cannot agree, for it is at least equally probable that the law officer gave other, damaging instructions in the Wiggington record, and, in that posture, the prejudice flowing from the error has certainly not been dispelled.

It is precisely this sort of situation that makes the inchoate record of trial so damaging to the accused. We are left to guess concerning what was really said in the other case, and there is no source to which we can legitimately turn which will fill the interstices of the advice on sentence. Under such circumstances, I am simply unwilling to strain beyond the limits of logical reasoning in order to supply a deficiency deliberately created by an experienced law officer. This was the sort of situation which Congress had in mind when it required a complete and separate record, and we should not resort to surmise and speculation in order to excuse a departure from its mandate.

My conclusion that the law officer's instruction by reference was prejudicial and resulted in an incomplete record brings me to the question whether accused's defense counsel waived the right to complain here by lack of objection at the trial level. Reliance is also placed on that rule by the majority in ordering affirmance. In the face of this purposeful violation of a fundamental portion of the Code, I would

not enforce waiver. We have not uniformly applied the doctrine, and the possibility of a miscarriage of justice is so great in the area of sentence instructions that we should not lightly subject the accused to the effect of his appointed counsel's silence. See United States v Brennan, 10 USCMA 109, 27 CMR 183; United States v Mamaluy, 10 USCMA 102, 27 CMR 176. Moreover, the responsibility for errors of this nature must rest as heavily upon the law officer and the Government as it does upon the accused. As we said in connection with a similar situation in United States v Caldwell, supra, at page 260:

". . . The procedure adopted by this president disregarded the normal method of running a court, and it should not be used but, assuming that written instructions are prepared by the law officer and a copy taken into the secret session, *there is a duty on the part of the Government to have them made part of the record on appeal.*" [Emphasis supplied.]

I would reverse the decision of the board of review and order a rehearing on the sentence.