UNITED STATES, Appellee

v

RAYMOND G. LOVETT, Private E–2, U. S. Army, Appellant

7 USCMA 704, 23 CMR 168

▮▮▮▮▮▮

705

No. 8933

Decided April 12, 1957

*First Lieutenant Gerald G. Barton* argued the cause for Appellant, Accused. With him on the brief was *Major Edward Fenig*.

*First Lieutenant William K. Davenport* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant John E. Riecker*.

### Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused's conviction by a general court-martial for several violations of the Uniform Code of Military Justice was affirmed by a board of review. We granted review to consider the accused's contention that he was denied the effective assistance of counsel.

On January 17, 1956, Chon Si Tong, a Korean soldier, was assaulted by two American soldiers. He could not, however, identify his assailants. At the accused's trial, a Private G. H. Walker testified that he and the accused were the persons who committed the assault.

A few hours before the accused's trial, Private Walker had been tried for his part in the attack on Chon Si Tong and for making a false official statement. His defense counsel was the same lawyer who later represented the accused. In accordance with a pre-trial agreement with the Staff Judge Advocate, Private Walker entered a plea of guilty. No mention of this agreement was made at the accused's trial. A divided board of review held that the accused was not prejudiced by his counsel's previous representation of Walker, notwithstanding that Walker was a "star" witness for the prosecution.

One of the fundamental rights of an accused in a criminal prosecution is his right to counsel. If the ▆ right has any meaning, counsel must not only be qualified, but must, of course, represent his client with undivided loyalty. United States v Hayman, 342 US 205, 72 S Ct 263, 96 L ed 232 (1952); Glasser v United States, 315 US 60, 62 S Ct 457, 86 L ed 680 (1942); Canon 6, Canons of Professional Ethics of the American Bar Association. The Manual for Courts-Martial, United States, 1951, refers to the matter as follows:

". . . He [defense counsel] will guard the interests of the accused by all honorable and legitimate means known to the law. It is his duty to undertake the defense regardless of his personal opinion as to the guilt of the accused; to disclose to the accused any interest he may have in connection with the case, any ground of possible disqualification, and any other matter which might influence the accused in the selection of counsel; to represent the accused with undivided fidelity, and not to divulge his secrets or confidence." [Paragraph 48c.]

Counsel must not represent conflicting interests. So strong is the prohibition that, despite the unquestioned purity of counsel's motives, any doubt concerning equivocal conduct on his part "must be regarded as having been antagonistic to the best interests of his client." United States v McCluskey, 6 USCMA 545, 550, 20 CMR 261.

The fact that in another case a defense lawyer represents a Government witness against the accused ▆ does not by itself justify a conclusion that the accused was denied effective legal assistance. On the contrary, inquiry can be made for the purpose of determining whether the relationship is of such a nature as to prejudice counsel's efforts on behalf of the accused. District of Columbia v Scott, 214 F2d 860 (CA DC Cir) (1954). See also Tucker v United States, 235 F2d 238 (CA 9th Cir) (1956). Here, there can be no doubt about the prejudicial nature of the relationship. ▆ Presumably, counsel was attempting to establish the accused's innocence. At the same time, however, he was under an affirmative duty to protect Walker's rights in a situation in which the interests of the accused were directly opposed to those of Walker.

In Taylor v United States, 226 F2d 337, the Court of Appeals for the District of Columbia Circuit was confronted with a case substantially similar to the one presented here. In that case, one Monroe was indicted for grand larceny and unauthorized use of a vehicle. Through his attorney he was brought to the attention of the Assistant United States Attorney engaged in narcotic law enforcement. Monroe became an informer agent, and, as such, purchased a quantity of narcotics from Taylor. Taylor was indicted for a narcotics violation. About three weeks before Taylor's case came on for trial, the criminal charges against Monroe were dismissed, but his counsel continued to represent him in a civil suit. The same lawyers represented Taylor in his case. Monroe appeared and testified as a Government witness against Taylor. The fact of counsel's dual representation was brought to the judge's attention, but counsel was permitted to represent

**707**

Taylor. Later, Taylor moved to set aside his conviction on the ground that he was denied effective legal assistance. The district judge denied the application. His ruling was reversed by the Court of Appeals, and a new trial was ordered. See, also, Craig v United States, 217 F2d 355 (CA 6th Cir) (1954); Scott v District of Columbia, 99 A2d 641 (Mun Ct of App DC) (1953), affirmed 214 F2d 860 (CA DC Cir) (1954).

Some question has been raised about the right of the board of review to take judicial notice of the Walker case. Both before and after the Uniform Code, boards of review have taken judicial notice of other records of trial before them in the interests of "expediency and justice." In United States v Jackson, 1 USCMA 190, 2 CMR 96, we noted some of these earlier decisions, but did not express an opinion on the permissible limits of the rule they followed. Later, in United States v Dickenson, 6 USCMA 438, 20 CMR 154, we said that we were not "disposed" to take judicial notice of specific testimony in another case. The latter case had not previously been, and was not then, on our docket. Our statement, therefore, merely expressed the general rule that an appellate court does not ordinarily take judicial notice of what may appear in the records of subordinate courts within its jurisdiction. White v Central Dispensary and Emergency Hospital, 99 F2d 355, 359 (CA DC Cir) (1938). An appellate court, however, can take judicial notice of its own records. Thus, in National Fire Ins. Co. v Thompson, 281 US 331, 50 S Ct 288, 74 L ed 881 (1930), the United States Supreme Court examined its own records in another case to ascertain the contents of an order by the Superintendent of Insurance of Missouri. See also Bienville Water Supply Co. v Mobile, 186 US 212, 217, 22 S Ct 820, 46 L ed 1132 (1902).

One of the most informative statements we have found on the right of an appellate tribunal to take judicial notice of its own records is that by Circuit Judge McDermott in Divide Creek Irr. Dist. v Hollingsworth, 72 F2d 859,

863 (CA 10th Cir) (1934). Writing for a unanimous court, he said:

". . . When the Supreme Court of the United States, or other appellate tribunal, can end litigation by an examination of its own records, it is in the interest of justice that it do so. No useful purpose is subserved by remanding the case to enable the parties formally to draw upon the record an indisputable and conclusive fact disclosed by an inspection of its own authentic records. And, as has been seen, the Supreme Court of the United States has frequently and uniformly wound up protracted litigation in that common sense way."

Here, the board of review concluded that the question of counsel's divided loyalty affected a "fundamental constitutional right" of the accused. We reach the same conclusion. Unfortunately, the board of review erroneously determined that the accused was not harmed by counsel's divided fidelity; but, in the interests of justice, its action in taking judicial notice of the Walker case was entirely proper. The "indisputable and conclusive fact" of counsel's dual representation as disclosed by the Walker record required reversal of this accused's conviction. United States v Taylor, supra.

The decision of the board of review is reversed. Although the accused entered a plea of guilty to a short period of unauthorized absence, we think it appropriate, in the interests of justice, to set aside the findings of guilty as to all the charges, together with the sentence, and we so direct. A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

Unlike the majority, I cannot permit the fundamental procedural question which is presented by this case to go underdeveloped. It furnished the main support for the holding of the board of review, it was the principal issue argued on this appeal, and during the hearing it prompted much in the way

708

of questioning by two Judges of the Court. Apparently it has been relegated to the heap of immaterial principles for it has received cavalier treatment at the hands of my associates. I refer to the principle that the issue of ineffective representation by counsel at the trial level could be considered as established before the board of review because of an application of the doctrine of judicial notice. Aside from any testimony which may be before us by that method, my search of the record leaves me with the impression that there is not one solitary bit of evidence to establish the facts which are argued by counsel on appeal. Whatever was shown in the record of the other trial has not been preserved for us to review. As a matter of information, it has not reached this Court; its relevant parts were not made part of this record; we know not what it contains; and the only information presently before us is that a board of review took judicial notice of a record.

Inevitably we will be forced into the undesirable position of being confronted with incomplete factual records unless we insist that all evidence considered by the lower tribunals, regardless of the method of proof, be made a matter of record. In the case at bar, the first time I find the subject of improper representation mentioned is in the brief of counsel for defense filed before the board of review. In that brief, I find a statement to the effect that the board may take judicial notice of the record in another case. The Government, in its reply brief, vigorously opposed that contention, and it is that dispute which brings the present deficiencies in this record into bold relief. Strangely enough, the parties were content to fight over presumptions, inferences and other speculative information, and no attempt was or has been made by them to present the board of review or this Court with the true facts controlling the critical question. To me the issues in this type of case are too important and the potentialities for harm too great to rely on a haphazard guess as to what happened between counsel and accused at the trial level. A serious charge has been leveled at a member of the bar, and we are confronted with the delicate question of ascertaining whether he violated the Canon of Ethics of the American Bar Association by failing to represent his client with undivided fidelity. While at first blush, an isolated decision in this case may not seem of much importance, lurking in the background is the shadow of a questionable appellate practice which, in the future, might cause serious and unnecessary embarrassment to defense counsel or their clients.

In this instance, failure on the part of appellate counsel to use the appellate processes at their disposal causes us to be confronted with this dilemma. If, on the one hand, we rely on judicial notice and hold there has been inadequate representation, a lawyer's reputation may be sullied without his being afforded any opportunity to meet the accusations of his accuser, for it must be remembered that if this form of proceedings is approved, an accused does not have to come forward with any evidence to show infidelity. If, on the other hand, we use the presumption of regularity as our crutch and find that the attorney carried on in the best tradition of the legal profession, an accused may be required to suffer because his counsel was in a compromising position where he could not bring before the court-martial many influential matters touching on the credibility of an important prosecution witness. It seems to me that we should not be content to decide a case with only those two alternatives facing us. Certainly, the least we can do is to require counsel to present fully the facts either to the board of review or this Court. There may be times when we are compelled to mold our appellate proceedings into an irregular pattern to prevent miscarriages of justice. But that should not be the case when the Code has provided adequate remedies to correct those unfortunate occurrences. In the case at bar, the only reason we are confronted with a paucity of facts to support a proper conclusion is because counsel refuse to use the means given them by the Code. Certainly I look with a great deal of disfavor upon being forced to decide a critical issue

without being fully and fairly advised in the premises when the facts are reasonably obtainable. In addition, I hesitate to skirt around the periphery of judicial legislation because counsel appointed to represent an accused stubbornly refuse to proceed in a well-recognized manner.

There are two methods provided by Congress by which an accused may have his claim of a denial of a ▮▮ fair trial reviewed by a board of review or by this Court. If he raises an issue at the trial level, then it may be considered on a petition for grant of review. If for good reason the dispute is not aired until the case is pending on appeal, then a petition for a new trial is appropriate. Generally speaking, when the first of the two proposed methods is selected, we are bound by the record which was made in the forums below. In that type of review, we should not become a nisi prius court to try every contention asserted by an accused, and neither should a board of review. Laying aside special proceedings such as insanity, new disputes are not ordinarily subject to being raised on direct appeal, and certainly if the questions sought to be reviewed are dependent upon facts which are in dispute, it is necessary that they be resolved by some fact-finding agency with authority to weigh the evidence and assess the credibility of witnesses.

A second method of reaching an error, if it was not in issue at trial or before the convening authority, is ▮▮ by motion for new trial. That method offers a means whereby the boards of review and this Court can go outside the record to ascertain facts underlying the reasons alleged by an accused as to why he is entitled to a reversal of the findings and sentence. If that method of approach is adopted, evidence can be obtained in any of the well-recognized manners, and factual disputes can be fully explored and properly resolved. While military counsel seem reluctant to employ this means of reaching those errors which deny an accused military due process, I have no hesitancy in saying that if the question to be reached is one of improper representation of counsel, which was not tried out before the record reached the board of review, then a petition for new trial is a most appropriate method to raise the question. Of course, an accused must carry the burden of proof if that method is adopted, but surely he is not entitled to relief unless he does so.

While I have considered the two foregoing methods separately, they may complement each other. ▮▮ When appellate defense counsel first appeared in this case, he was faced with the problem of reaching the alleged error that defense counsel at the trial level had improperly represented the accused. I know of no reason why appellate counsel could not have used a two-pronged approach to present that issue to the board of review. The record of trial automatically reaches that tribunal for consideration of all matters appearing therein, but even a cursory look at its contents would convince any advocate that it contained no evidence on the issue of ineffective assistance of counsel. What, then, should have been done to place the matter squarely before the board for its consideration? Appellate defense counsel should have filed a petition for new trial accompanied by affidavits setting forth the facts supporting the alleged misrepresentation. I suppose that as to those facts which were not in dispute, he might have obtained a stipulation from Government counsel, but the others could have been produced in affidavit form. The prosecution could then have had an opportunity to answer. When issues were joined, a full-dress hearing could have been ordered, had such been considered necessary. To have followed that method would have resulted in the matter being presented in two ways, and the board of review would not have had to seize upon judicial notice to afford relief to the accused, if he was entitled thereto. However, when defense counsel limited his method of proceeding to that of the ordinary appeal, the board of review had to rely on a questionable means of proof to reach what, on the surface, appeared to have been a gross injustice.

It was bad enough that counsel for

710

the accused failed to furnish the board with more information, but a more critical failure arises out of his refusal to augment his petition for review after the case reached this Court. When the appeal was being argued before this Court, it was suggested in the form of questions that a more satisfactory conclusion could be reached if the matter was raised by an appropriate pleading in this Court. Time would have permitted a petition to be filed, but our suggestions may die a-borning because no action has been taken and the period will likely pass without further efforts by counsel.

While I may appear critical of appellate defense counsel, counsel for the Government must shoulder ▮ some responsibility for the under development of the facts. When they were apprised by the board of review that it contemplated taking judicial notice of the record in another case, that was a warning flag, and it should have become painfully apparent to them that a request to take evidence should be made. Undoubtedly there are some matters susceptible of being proven by judicial notice which can be rebutted, avoided, or explained. If, in this instance, the board of review was going to make judicial notice the basis for a finding of infidelity of counsel, then Government counsel should not have been content to contest the question on that narrow ground only. The purpose of litigating issues is to ascertain the truth, and facts should be presented to the fullest extent practicable. Obviously, when counsel for an accused is charged with incompetency or impropriety, he is not a party of record, but his reputation is at stake. Before it should be put in jeopardy, the Government should seek to have him present his evidence because what he states in defense of his efforts not only protects him but it may be particularly relevant on the issue involved. Regardless of how adroit we may be in phrasing our opinion, the net result of a reversal in this case is to tar trial defense counsel with a failure to properly represent his client. That might be necessary but, to say the least, it should be avoided until we are better informed on the merits of the controversy.

I suppose this issue did not appear so critical when the case was before the board of review because, after concluding judicial notice could be taken of many evidentiary matters, the board held there was no prejudice to the accused. Under that holding, trial defense counsel may not be the subject of censure, but he is under the present decision.

Now back to the issue of judicial notice. While I have grave doubts that judicial notice would bring before the board some of the evidentiary items relied on to support its conclusion, at this time it is not essential for me to specifically so hold. I do, however, conclude that the board ▮ erred in finding that it could decide the question and then not requiring the production of evidence; and, in this connection, I wonder whether a reader might not find it of more than passing interest to read the complete opinion in Divide Creek Irr. Dist. v Hollingsworth, quoted in the majority opinion, and note the treatment there indicated for the taking of judicial notice. Because there are so many variations to the general rule of judicial notice, I see no point in documenting the basic question. The point of importance is that the rule is founded on the principle that the matter noticed is taken as true without the offering of evidence by the party who should do so because the agency considering the question assumes that the matter is so notorious it will not be disputed. In the light of that concept, my point is this: When evidence which may be qualified, explained, or denied is judicially noted, it should not be accepted as true until the party against whom it is to be used has been afforded an opportunity to come forward with his denial, explanation, or qualification. It is entirely possible that unless both parties are offered their day in court, the conclusion reached in reliance on judicially noticed testimony might be erroneous. That result is a distinct possibility in this case.

In United States v Ferguson, 5 USCMA 68, 17 CMR 68, I sought to

point out the proper procedure to be followed when matters outside the record are raised as an issue after conviction and sentence. There I sought to show that rules of appellate procedure could not be ignored with impunity. Furthermore, I suggested that if a petition for new trial was filed, a de novo hearing could be had in the appropriate forum, and in that event both sides would have a fair opportunity to obtain and present their evidence. My two associates on the Court chose different methods of approach to reach the error, but implicit in their holdings is the principle that appellate courts will crash through procedural rules to correct injustices. Conceding that no clear-cut rule has been announced, I nevertheless conclude that we can clear up some of the uncertainty shrouding this question. Therefore, in order to keep some semblance of order in our appellate processes, I suggest that we should approve one of two possible methods of reaching this sort of error. Either we should announce that inadequate representation may be raised as an issue on appeal by an assignment of error in the brief, or that such an assignment in the brief will be considered as the initiatory pleading in a motion for new trial. That, however, is but the beginning of the process, not the end. Under either method, we should require a full development of the evidence, that is to say, a complete and careful presentation of all relevant facts to the board of review or this Court. If the operative facts cannot be obtained by the accused or his counsel, then we should go one step further and rely on the following principle. If the evidence furnished by the accused shows that his appointed defense counsel was detailed to represent a coaccused, and it is asserted that the two had inconsistent defenses upon that showing, the burden would shift to the Government to show effective assistance of counsel. In the instant case, I would apply the rule in this manner. If the evidence of accused, his coaccused, and the trial defense counsel can be obtained, it should be produced. If their testimony cannot be procured, I assume the records which are available will furnish facts to show that the same counsel represented this accused and his coaccused; that the latter pleaded guilty to the crime alleged; and that he thereafter testified against this accused. On the surface, that would suggest a conflict of interest and, such being the case, the burden to show adequate and proper counseling would shift to the Government. In the absence of evidence to show loyal and proper representation, I would reverse.

I appreciate the fact that under my rule I would impose on the Government a burden usually borne by the accused. Furthermore, I am fully cognizant of the fact that many convicted criminals complain of improper representation after they are confined in a penitentiary, and in most instances there is no merit to their contention. However, the possibilities of prejudice to one accused who has not had the benefit of adequate representation are so great, and his means of proving his counsel's infidelity so limited, that some effort must be expended to throw a shield of protection around those few persons who might be victimized by their own counsel. For the most part, in the military judicial system an accused is far removed from his appellate counsel and he must rely on his appointed counselor to seize the initiative and carry on in his absence. Therefore, when, as here, counsel was presented with the existence of some official records which tended to raise a suspicion that trial defense counsel might have been ordered to represent clients with conflicting interests, good appellate representation demanded that a complete and thorough investigation be made. If infidelity was suggested by the records, then the preparation of pleadings and affidavits sufficient to present the issue thoroughly was required. It is better that we impose some obligation on counsel than to impose on ourselves the necessity of relying on presumptions, inadequately supported inferences, or pure speculation to support our conclusions.

I would return the record to the board of review to take evidence on the issue and then make appropriate findings.

Because my views do not become the law, I join my associates in their conclusion that this conviction cannot stand and I concur in their result.