UNITED STATES, Appellee

v

WALLACE GRZEGORCZYK, Private First Class, U. S. Marine Corps, Appellant

8 USCMA 571, 25 CMR 75

No. 10,338

Decided January 3, 1958

*Commander David Bolton,* USN, argued the cause for Appellant, Accused.

*Lieutenant (jg) John V. L. Ellicott,* USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Charles H. Beale, Jr.,* USMC.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The findings of guilty and the sentence are set aside. United States v Thornton, 8 USCMA 57, 23 CMR 281, and United States v Lovett, 7 USCMA 704, 23 CMR 168.

A rehearing may be ordered.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The question we agreed to consider in this case is whether the accused was adequately represented by trial counsel, who was also the attorney for two prosecution witnesses testifying against the accused. As a result of of several transactions which involved the alleged theft, receipt, and sale of four Government pistols, accused was tried and convicted of violations of Articles 108, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 908, 921, and 934. During the early portion of his trial, the prosecution called a Corporal Daniels as a witness. Events transpiring when defense counsel attempted to advise the witness of his privilege against self-incrimination reveal that he had represented Daniels upon a charge involving the same transaction before a general court-martial in which the witness had pleaded guilty. The law officer, considering the plea of guilty to be a waiver of the privilege against self-incrimination, ordered the witness to testify.[1] The substance of Daniels' statement was that he purchased two pistols from the accused which were sold subsequently to a third person.

The Government elicited testimony from two succeeding witnesses who testified that they had purchased the pistols from Daniels. Subsequently the prosecution called Cypert as a witness. Although he also attempted to assert his privilege against self-incrimination, the law officer determined that he was "tried for and convicted of the same subject matters" and that he had pleaded guilty, thereby waiving his privilege against self-incrimination. After his claim was overruled, he testified he had purchased two pistols from the accused and sold them to two named individuals. He was also represented by the accused's defense counsel.

I do not deny that United States v Thornton, 8 USCMA 57, 23 CMR 281, and United States v Lovett, 7 USCMA 704, 23 CMR 168, may be dispositive of the instant case, but there is language in *Lovett* which could lead to a different result. In that case, I warned of the danger inherent in the majority opinion. This danger materialized in *Thornton,* wherein the Court determined that the accused was denied effective assistance of counsel, basing its conclusion upon what I believed to be the sheerest conjecture and speculation imaginable. Despite the Cassandrian reception which my admonitions received in those two instances, this case amply supports their validity.

I have studied the record with considerable care and cannot find any manner in which the accused was prejudiced. At trial, the Government introduced the accused's written confession which alone proved his guilt beyond a reasonable doubt. Defense counsel raised the issue of voluntariness by placing his client on the stand and artfully succeeded in causing a ripple of doubt in normally still waters. His cross-examination of Government witnesses was productive of admissions helpful to the accused. When Daniels and Cypert were placed upon the stand, defense counsel who had previously represented them went far beyond the limits of ordinary representation by re-

---

[1] The law officer may have erred in his ruling, but it need not concern us here as a violation of the privilege against self-incrimination could only prejudice the witness testifying and not the accused.

peatedly suggesting to them that they wrap themselves in the mantle of the privilege against self-incrimination. This they attempted to do, but when the law officer was unreceptive to this procedure, defense counsel gave more than one impassioned speech for the benefit of his client. The record is filled with arguments made by this worthy advocate, and the following are illustrative of his aggressiveness:

"DC: I resent this to, Mr. Law Officer. It is my contention that his case has not been given final appellate review and that if he wants to and believe me I have been telling him not to by telling him to say in the court what it is his personal privilage [sic] to say I don't want to testify, on the grounds of under Article 31, self incrimination. Now it is a peculiar situation. I represented the boy, and I have to review the case. It is going to be my final review, whatever I say, I might say I don't approve."

And again:

"DC: I have a right to butt in if I feel he is legally entitled not to testify and he knows it. I feel in my mind that the law officer should so insturct [sic] him. If the law officer feels he has no obligation to advise him that he does not have to testify, that is alright with me, but I am not going to just sit here and let this man testify otherwise. I can't stand here and stop him, that is true and I am not trying to put any stop to the court. I hope the court doesn't get angry with me, but I am trying to protect this kid's rights all the way through. You can be assured of that."

When the law officer indicated that defense counsel could not exercise the privilege for the witness, this counsel asked for a recess and it was granted. It is a fair assumption that he advised the witnesses to claim their privilege. Furthermore, when Daniels was forced to testify, defense counsel impeached his credibility by eliciting from him the fact that he had been convicted by a general court-martial. . This was not necessary in the case of Cypert, as this information was revealed in direct examination by the law officer when he was faced with a ruling on the witness' claim of immunity.

Finally, the two witnesses above mentioned were used only to establish a chain of custody. Twelve other witnesses testified for the prosecution and, as was previously mentioned, the accused's confession was in evidence. The Government's case would have been compelling had Daniels and Cypert not been called to the witness stand. True, the accused was convicted, but I fail to see how or in what manner this counsel was handicapped by dual representation. Quite to the contrary, I believe he occupied a preferred position to help this accused on the merits.

After findings, he produced evidence in extenuation and mitigation, and the sum total of his efforts resulted in the accused's sentence as affirmed by the board of review, including only bad-conduct discharge, total forfeitures, and nine months' confinement, when the maximum sentence imposable was a dishonorable discharge, total forfeitures, and confinement for nineteen years. I would say that is not a bad day's work and that this client would not disown the counsel who served him so well.

I, therefore, repeat the language of my dissent in United States v Thornton, supra:

". . . Either this accused was specifically prejudiced by having an attorney for his counselor who could not represent him properly or he is not entitled to relief. As I understand the rule followed by appellate courts, the burden is on the accused to show reasonably that his right to effective counsel was impaired. There is no such showing here and well there could not be for the record shows the accused was well and adequately represented."

I would affirm the decision of the board of review.