UNITED STATES

v.

Private (E–1) Larry A. DAVIS, 228–86–5987, U. S. Army, Company B, 78th Engineer Battalion, APO New York 09351.

CM 433636.

U. S. Army Court of Military Review.

Sentence Adjudged 6 May 1975.

Decided 31 March 1976.

Appellate Counsel for the Accused: CPT Derryl W. Peden, JAGC; CPT Anthony J. Siano, JAGC; LTC James Kucera, JAGC.

Appellate Counsel for the United States: CPT Gay M. Holmes, JAGC; CPT William C. Kirk, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

BAILEY, Senior Judge:

Upon trial by general court-martial with members, the appellant, contrary to his pleas, was convicted of possession of a switchblade knife and robbery in violation of Articles 92 and 122, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 922, respectively. He was sentenced to be dishonorably discharged from the service, to be confined at hard labor for two years, and to forfeit all pay and allowances. The convening authority approved the sentence.

Of the errors assigned by appellate defense counsel, only the following requires discussion:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL SINCE HIS ATTORNEYS HAD ALSO SERVED AS DEFENSE COUNSEL FOR A CODEFENDANT WHO, AFTER A GRANT OF IMMUNITY, BECAME THE GOVERNMENT'S PRINCIPAL WITNESS.

The facts and circumstances giving rise to this assignment of error are substantially as follows. The appellant's trial by court-martial stemmed from his participation in

the robbery of a German civilian. Also involved in the offense were one Private First Class Joe Piazza and one Private Shelton D. Grady. After preliminary investigation, charges were preferred against each of the three individually, they were simultaneously referred to a single investigating officer, and were investigated in accordance with the provisions of Article 32, Code, *supra*. Examination of the Article 32 Investigating Officer's Report, dated 19 March 1975, shows that, pursuant to his request, Piazza was represented at the hearing by Captain W, as individually requested defense counsel. It also shows that, pursuant to their requests that counsel for them be provided by the convening authority, Captain S, as detailed counsel, represented both Davis and Grady. Appellate Exhibits I, II, and III indicate that accused Grady was granted immunity by the convening authority on 22 April 1975, and that, in due course, Captain W and Captain S were informed of this development. Thereafter, on 28 April 1975, the charges against Davis and Piazza were referred for trial by general court-martial, with an instruction that they be tried in common. As depicted in the record of trial, the court-martial convening order lists Captain W as defense counsel and Captain S as assistant defense counsel. Upon inquiry by the military judge, accused Piazza stated that he desired to be defended by both Captain W and Captain S. Accused Davis stated that he, too, desired to be defended by both Captain W and Captain S. Also, upon inquiry by the military judge, defense counsel stated that they had discussed the possibility of a conflict of interest and were satisfied that there was none. The record further shows that Private Grady appeared as a witness and gave significant testimony for the prosecution.

It is against this backdrop that appellate defense counsel contend that the appellant was denied the effective assistance of counsel. It is their position that Captain W and Captain S were initially engaged in an effort to jointly defend all three accused. However, after the grant of immunity to Private Grady, they had the task of defending the two remaining defendants against a prosecution witness whom they had served as defense counsel regarding his participation in the same offense. Perhaps unwittingly, their argument continues, they were less effective advocates because of their prior relationship with Private Grady. We do not agree.

It is well established that one of the fundamental rights of an accused in a criminal prosecution is his right to counsel. If the right has any meaning, counsel must not only be qualified, but must, of course, represent his client with undivided loyalty. *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Thus counsel must not represent conflicting interests. So strong is the prohibition that, despite the unquestioned purity of counsel's motives, any doubt concerning equivocal conduct on his part "must be regarded as having been antagonistic to the best interests of his client." *United States v. McCluskey*, 6 U.S.C.M.A. 545, 550, 20 C.M.R. 261, 266 (1955). *See* American Bar Association Standards Relating to the Prosecution and the Defense Function (Section 3.5, Defense Function); *United States v. Evans*, 24 U.S.C.M.A. 14, 51 C.M.R. 64, 1 M.J. 206 (1975). However, the fact that in another case a defense lawyer represents a Government witness against the accused does not by itself justify a conclusion that the accused was denied effective legal assistance. Inquiry can be made for the purpose of determining whether the relationship is of such a nature as to prejudice counsel's efforts on behalf of the accused. *United States v. Lovett*, 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957). In the absence of any specific reference to matters which would support the defense's claim of a denial of the effective assistance of counsel, we extend, as we must, our inquiry to the record of trial.

At the outset, we note that, presumably with the understanding and agreement of Captain S and the co-accused, Captain W conducted the presentation of the defense's case. Of particular significance here is his

cross and recross-examination of Private Grady:

## CROSS–EXAMINATION

"Q: Private Grady, did you talk to someone here in Mannheim in this office about testifying?

A: Yes, Sir.

Q: When did you do that?

A: I can't recall the date, Sir.

Q: Okay. Do you remember who you talked to?

A: I talked to Captain McCall and I don't know the other captain's name.

Q: Were you told by either of these two captains that you talked to that you had to testify here today?

A: Yes, Sir.

Q: And what were you told would happen if you didn't testify today?

A: I would be charged with contempt of court.

Q: Did you speak to me after you had spoken to them?

A: Yes, Sir.

Q: And did you tell me that you did not see either Piazza or Davis, or yourself for that matter, ask anyone for money, threaten anyone or take any money from anyone that evening?

A: Yes, Sir.

DC: No further questions.

\*　　\*　　\*　　\*　　\*　　\*

## RECROSS–EXAMINATION

"Q: Private Grady, when you first, when you and I had our first conversation about this incident, did you tell me that you had nothing to do with the robbery?

A: In our first conversation, yes.

Q: Did you tell me that Piazza and Davis had nothing to do with the robbery that evening also?

A: Yes, Sir.

Q: That, in fact, none of the three of you had seen this Mr. Kunz that evening, on the 28th of December?

A: Yes, Sir.

Q: And after we had our conversation, after the 32 investigation, Article 32 investigation, were you worried about being found guilty even though you had told me that you had not partaken in this robbery?

A: Yes.

\*　　\*　　\*　　\*　　\*　　\*

Q: *When you had your conversations with this captain up here* and also Captain McCall, was it explained to you that you could not be punished for that offense?

A: Yes." (Emphasis supplied).

The following portion of Private Grady's testimony, given in response to questions asked by the military judge, is also pertinent to our inquiry and discussion:

## EXAMINATION BY MILITARY JUDGE

"Q: Now Private Grady, apparently you told one version today and you told Captain W. . . . another version, is that correct?

A: Yes, Sir.

Q: All right. Now is either of these versions the truth?

A: Yes, Sir.

Q: Which one is the truth?

A: Both of them, Sir.

Q: Well wait a minute. How could both be the truth. One you said you didn't know anything about it and then today you said that you helped commit the offense. Now they both can't be the truth can they?

A: Yes, Sir.

Q: How? Explain that.

A: *Because at first Captain W. . . asked me did we rob the German before I got appointed a lawyer here in Mannheim and I denied charges.* I got over here in Mannheim, they granted me immunity and then just told the truth, Sir.

Q: I don't mean that. When you spoke to Captain W. . . . did you tell him that you knew nothing about what happened that night?

A: That was before I got granted immunity.

Q: I understand that. Now was that the truth?

A: No, Sir." (Emphasis supplied).

At the outset, it is to be noted that, there emerges from Private Grady's testimony the impression that he may well have, in effect, severed his relationship with Captain W and Captain S by obtaining other counsel through whom he obtained immunity from prosecution. In this setting, what was said in *United States v. Donatelli*, 484 F.2d 505 (1st Cir. 1973), warrants noting here. There it was held that the fact that the defense counsel had prior lawyer-client relationship with a government witness did not deny defendant effective assistance of counsel where the legal relationship between defense counsel and the witness had been severed before time of trial. Regarding the possibility of a conflict of interest the court, in part, stated:

"As to the possibility that there existed a conflict of interest which affected the ability of defendant's trial counsel to vigorously defend his interests, the key question is whether any such conflict existed. We must be peculiarly sensitive to such allegations, *Marxuach v. United States*, 398 F.2d 548, 552 (1st Cir.), cert. denied, 393 U.S. 982, 89 S.Ct. 454, 21 L.Ed.2d 443 (1968). But we must also recognize that it is up to the defendant to establish that such a conflict existed at his trial. Here the only fact shown is that on two occasions, before Donatelli's trial, Scaduto came to Donatelli's attorney and sought legal representation. By the time of defendant's trial Scaduto had retained a different attorney and had apparently severed all legal relationship with Donatelli's lawyer. There is no hint that at the time of trial defendant's counsel had any divided loyalties. Such cases as *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Craig v. United States*, 217 F.2d 355 (6th Cir. 1954); *Taylor v. United States*, 96 U.S.App.D.C. 379, 226 F.2d 337 (1955), and *United States ex rel. Williamson v. LaVallee*, 282 F.Supp. 968 (E.D.N.Y.1968) are therefore distinguishable because in all of them the defendant's counsel was also involved in a present legal representation relationship with either a co-defendant or a government witness. We are unwilling, in the absence of any showing of additional facts indicating a conflict of loyalties, to assume that an attorney who has severed his attorney-client relationship with a government witness retains a conflict of interest at trial. We therefore conclude that defendant has failed to establish that his trial counsel had a conflict of interest at trial." (*Id.* at 506–507).

Here, any doubt as to Captain W's loyalty to the appellant was totally dissipated by his act of attacking Private Grady's credibility as a witness. He, apparently, was willing to assume any possible risk of censure by eliciting from Private Grady on cross-examination that he had given sworn testimony which was entirely contradictory to the story which he had told before trial. Such conduct served to demonstrate his loyalty to the appellant and would seem to favor rather than prejudice him. It is also important to note that the information Captain W received from Private Grady was limited to a complete denial of having committed or participated in the commission of the robbery offense. Appellate defense counsel have not indicated in what respect Captain W was deterred from adequately representing the appellant by virtue of privileged information in his possession. Moreover, a fair reading of the record does not warrant our concluding, as urged by appellate defense counsel, that counsel for the appellant were less effective advocates because of their relationship with Private Grady.

The remaining assignment of error has been considered and found to be non-meritorious.

The findings of guilty and the sentence are affirmed.

Judge COOK and Judge DeFORD concur.