**UNITED STATES**

v.

**Dennis CAHILL, 097 46 3082, Private (E–1), U. S. Marine Corps.**

**NCM 77 0741.**

U. S. Navy Court of Military Review.

Sentence Adjudged 9 November 1976.

Decided 24 August 1977.

LT Robert R. Sparks, Jr., JAGC, USNR, Appellate Defense Counsel. CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and BAUM and GREGORY, JJ.

BAUM, Judge:

Contrary to his pleas, appellant was convicted by special court-martial of a variety of disrespect, disobedience and assault offenses arising out of two incidents of drunkenness. These incidents also resulted in two drunk and disorderly convictions based on a plea of guilty to one and not guilty to the other. On review below, some of the findings were reduced to lesser included offenses and the sentence reassessed accordingly. As approved below, the sentence consists of a bad conduct discharge, confinement at hard labor for three months, and forfeitures of $245 per month for three months. Appellant has assigned as the sole error in this case that he was denied the undivided attention of his trial defense counsel on the basis of that attorney's representation of a key prosecution witness at an unrelated prior court-martial and his apparent continuing relationship as counsel for that witness during appellant's trial.

The earliest and leading Court of Military Appeals decision on this subject is *United States v. Lovett*, 7 U.S.C.M.A. 704, 23 C.M.R. 168 (1957). In that case trial defense counsel represented the principal prosecution witness at a prior trial for offenses as a co-actor of the accused. The Court held that while representation of a Government witness by itself does not justify a conclusion that the accused was denied effective representation, it may result in that determination upon further inquiry. Such was ultimately concluded in *Lovett* and resulted in reversal. In so doing, the Court expressed some very strong language on this subject:

One of the fundamental rights of an accused in a criminal prosecution is his right to counsel. If the right has any meaning, counsel must not only be qualified, but must, of course, represent his client with undivided loyalty. *United States v. Hayman*, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Canon 6, Canons of Professional Ethics of the American Bar Association. The Manual for Courts-Martial, United States, 1951, refers to the matter as follows:

". . . He [defense counsel] will guard the interests of the accused by all honorable and legitimate means known to the law. It is his duty to

undertake the defense regardless of his personal opinion as to the guilt of the accused; to disclose to the accused any interest he may have in connection with the case, any ground of possible disqualification, and any other matter which might influence the accused in the selection of counsel; to represent the accused with undivided fidelity, and not to divulge his secrets or confidence." [Paragraph 48*c*].

Counsel must not represent conflicting interests. So strong is the prohibition that, despite the unquestioned purity of counsel's motives, any doubt concerning equivocal conduct on his part "must be regarded as having been antagonistic to the best interests of his client." *United States v. McCluskey*, 6 U.S.C.M.A. 545, 550, 20 C.M.R. 261. [7 U.S.C.M.A. at 707, 23 C.M.R. at 171].

Thereafter, a number of similar cases were decided by the United States Court of Military Appeals wherein the accused was represented at trial by counsel who had also represented a prosecution witness at an earlier trial for similar offenses. In all of these cases the Court of Military Appeals found the conflict warranted reversal. *See United States v. Thornton*, 8 U.S.C.M.A. 57, 23 C.M.R. 281 (1957); *United States v. Eskridge*, 8 U.S.C.M.A. 261, 24 C.M.R. 71 (1957); *United States v. Grzegorczyk*, 8 U.S.C.M.A. 571, 25 C.M.R. 75 (1958), and *United States v. Moore*, 9 U.S.C.M.A. 284, 26 C.M.R. 64 (1958).

The Government in the instant case reiterates the *Lovett* principle that representation of an accused and a prosecution witness does not, in and of itself, require reversal for denial of effective assistance of counsel, but does warrant further inquiry into the matter. Government counsel asserts that such an inquiry into the facts of this particular case establishes that appellant's trial defense counsel acted properly and embarked upon a defensive course of action which was in the best interests of appellant. Accordingly, the Government concludes that such representation fairly and adequately protected appellant and provided him with undivided loyalty. On the other hand, appellant maintains that he was deprived of his defense counsel's undivided loyalty by such dual representation which resulted in the real danger that his defense may have been unwittingly undercut.

■ The facts as revealed by attached affidavits are that a Corporal Banks, who testified at trial that appellant disobeyed his order to go to bed and then was disrespectful in language to him, was represented approximately a month and a half earlier by appellant's counsel at a special court-martial resulting in a conviction of larceny. Appellant's counsel also provided this witness with legal advice concerning a charge of making a false official statement. Two weeks prior to the conclusion of Banks' special court-martial, he received nonjudicial punishment for making the false official statement. Sometime after completion of Banks' trial on 27 September 1976, appellant's counsel assisted in obtaining supporting documents for a clemency petition on his behalf. It is not clear whether these clemency actions were taken around the time of appellant's trial on 9 November 1976, but it is clear that the supervisory authority did not act on Corporal Banks' case until 23 December 1976, when he declined to exercise clemency on his staff judge advocate's recommendation because of a belief that Banks had testified falsely on the merits during his court-martial. None of these facts were brought out at appellant's trial or afterwards by appellant's counsel. Instead, they came from an affidavit filed by Banks' individual military counsel in the September court-martial. Appellant's counsel, in his post-trial affidavit, states only that although he had "previously represented" the witness, he had independently determined that it was in appellant's best interest not to attack the witness' credibility because the testimony would be most favorable to the defense that appellant was incapable of forming the requisite intent due to incapacitation from alcohol. Furthermore, counsel believed that if Banks were impeached there were at least two other witnesses who could have

been called for rehabilitation but that they would have testified less favorably as to appellant's intoxication. He, accordingly, decided that appellant's "interests would be best served by permitting Corporal Banks to testify without impeachment and that this could be done without prejudice to Corporal Banks." Counsel followed this course at trial. The question remains, however, as posed in a specially appointed counsel's post-trial response to the staff judge advocate's review: whether subconsciously or otherwise "the trial defense counsel may have given up any of several avenues of approach, which could have resulted in a not guilty finding, to pursue a defense of voluntary intoxication solely because of the dual representation." While any answer to that question would at best be speculative to some extent, it is enlightening to note that the trial defense counsel did apparently consider and later reject an alternative defensive tactic which would have required vigorous cross-examination of Corporal Banks.

In counsel's opening statement to the court, he said:

You will be looking for an indication that Corporal Banks was not acting properly in the execution of his office. [R. 64].

This, if so, could have been a defense to the disrespect charge and possibly the order offense also, if it resulted in an unlawful order. Corporal Banks did testify that he hit appellant but counsel did not cross-examine in detail concerning this matter nor did he pursue in his final argument to the court the matter of Banks' not acting properly in the execution of his office. We do not know why counsel chose not to follow up on this possible defense or whether it held forth any chance of success at all. We do know, however, that faced with a choice of possible defensive actions, the appellant is entitled to a counsel who can make such choices unencumbered by countervailing obligations. Furthermore, as a minimum requirement in such cases as this one, both clients must be fully informed of the circumstances pursuant to the American Bar Association, Code of Professional Responsibility, which has been made applicable to

court-martial counsel by the JAG Manual, Article 0142. Ethical Consideration 5–16 of that Code provides as follows:

EC 5–16 In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent. If there are present other circumstances that might cause any of the multiple clients to question the undivided loyalty of the lawyer, he should also advise all of the clients of those circumstances.

As stated in the response to the staff judge advocate's review, "There is no indication, either by affidavit or record of trial, that the accused or Corporal Banks was advised as to the dual representation." A statement by appellant executed incident to appointment of a special counsel to represent his post-trial interests, in fact, appears to indicate his first awareness at that time of the possible conflict of interest situation involving his trial defense counsel. Possibly both clients were fully informed earlier pursuant to the Code of Professional Responsibility and it simply was not made a matter of record, but at this point we do not know. Return of the record of trial for a hearing on this issue would resolve the question with certainty, but in light of the strong inconsistent competing interests weighing on defense counsel that are apparent from the record, such is considered unnecessary and mandates reversal of the conviction pursuant to *United States v. Lovett*, *supra*.

As noted by another panel of this Court in *United States v. Anderson*, No. 77 0008 (N.C.M.R. 29 April 1977), there seems little to distinguish cases such as this one from those in which counsel acted for a co-accused with conflicting in-

terests. In *Anderson*, prejudice was found to extend only to certain charges. We do not agree that prejudice in such cases can be isolated in this manner. Once an unresolved conflict of representation has been determined to exist, nice calculations as to its effect on certain offenses or portions of the trial will not suffice as a cure. Errors affecting the fundamental right to undivided loyalty of counsel are just not susceptible to such fine assessments as to the extent of prejudice. *See Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and Ethical Consideration 5–15 of the ABA Code of Professional Responsibility. The conflict revealed by this record, although relating to a witness who testified on only some of the charges, so tainted the representation of appellant that it necessitates reversal of all findings of guilty. Defense counsel in *Anderson* revealed his dual representation to the judge during trial but for another reason—to prevent the Government from calling the client witness, which was unsuccessful. Apparently, the matters addressed in this opinion were not considered by counsel or judge in that case. The appropriate course for counsel to take when confronted with conflicting representation is to fully air the matter before the judge, covering counsel's compliance with the provisions of the Code of Professional Responsibility. Accordingly, it is the holding of this Court that, henceforth, court-martial counsel must disclose the fact of their representation of multiple clients with potentially conflicting interests to the judge in open court and the judge must assure himself that the accused has made an informed choice as to continuing with counsel under such circumstances. When trial is by members, such disclosure should be made outside of their presence.

The findings of guilty and sentence are disapproved. A rehearing may be ordered if deemed practicable.

Chief Judge CEDARBURG and Judge GREGORY concur.