UNITED STATES

v.

**Matthew J. HAUBER, 030 50 0088, Air Controlman Airman, U. S. Navy.**

**NMCM 81 2753.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 26 Feb. 1981.

Decided 31 March 1982.

LT Thomas P. Murphy, JAGC, USNR, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before BAUM, Senior Judge, and ABERNATHY and KERCHEVAL, JJ.

PER CURIAM:

We have examined the record of trial, the assignments of error and the Government's reply thereto and have concluded that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence as approved on review below are affirmed.

BAUM, Senior Judge (dissenting):

Appellant has assigned two errors in summary fashion which the majority has summarily rejected. I disagree with my brothers' treatment and ultimate resolution of the case. While I do not concur with the first assignment of error as phrased, it does allude to a matter that, in my opinion, requires reversal of this case. The assignment asserts that:

THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT HIS DETAILED DEFENSE COUNSEL HAD FORMED AN ATTORNEY–CLIENT RELATIONSHIP WITH THE SERVICEMAN FROM WHOM THE APPELLANT OBTAINED POSSESSION OF THE DRUGS, AND ON WHOSE BEHALF THE APPELLANT TRANSFERRED THE DRUGS, WHICH WERE THE SUBJECT MATTER OF SPECIFICATIONS 4 AND 5 OF THE CHARGE. (R. 22–24). *SEE UNITED STATES V. PEREZ*, 46 C.M.R. 877 (ACMR 1972) (ADEQUACY OF COUNCEL [sic] IS NOT THE TEST; "WHEN CONFLICTING INTERESTS ARE PRESENT, AND A MERE *POSSIBILITY* OF PREJUDICE EXISTS, A DENIAL OF THE RIGHT TO FULL AND EFFECTIVE ASSISTANCE OF COUNSEL MUST BE FOUND AND REVERSAL IS REQUIRED." *ID.* AT 880).

The issue of the proper method for resolving such possible conflicts of interest has been addressed previously by both this Court and the Court of Military Appeals. *See United States v. Cahill*, 3 M.J. 1030 (NCMR 1977), and *United States v. Davis*, 3 M.J. 430 (CMA 1977). Although neither counsel for the appellant nor the Government has cited these cases, I find them dispositive of the issue.

In *United States v. Cahill, supra*, this Court, on 24 August 1977, stated:

" . . . it is the holding of this Court that, henceforth, court-martial counsel must disclose the fact of their representation of multiple clients with potentially conflicting interests to the judge in open court and the judge must assure himself that the accused has made an informed choice as to continuing with counsel under such circumstances." [1]

Subsequently, on 11 October 1977, the Court of Military Appeals in *United States v. Davis, supra*, also endorsed such a procedure when it approved the concept embodied in *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), of having the trial judge obtain a waiver from the accused after advising him of the potential dangers of representation by a counsel with a conflict of

[1]. *Id.* at 1034.

interest. Such a procedure envisioned the eliciting of a narrative response from the accused reflecting an understanding of the details of the possible conflict of interest and the potential perils of such a conflict.[2]

Here, the matter of defense counsel's dual representation was revealed during the judge's inquiry into the providence of appellant's pleas. It was at the point where the judge asked appellant to identify his drug supplier that counsel revealed to the judge his earlier representation of that individual also. The matter was treated in its entirety as follows:

> ... I left my BEQ room and went upstairs with the money that he had given me, that Yancy had given me and I bought 20 qualudes for $100.00 from the person in the barracks, brought them back to my room and gave them to Rick Yancy.
>
> MJ: Did you pocket any of the money yourself?
>
> ACC: No sir.
>
> MJ: So you were just doing this on behalf of Yancy?
>
> ACC: Yes sir.
>
> MJ: So you possessed the qualudes for a short period of time when you brought them from one deck to another until you transferred the qualudes to Yancy, is that correct?
>
> ACC: Yes sir.
>
> MJ: This all occurred in the BEQ?
>
> ACC: Yes sir.
>
> MJ: Barracks—
>
> ACC: BEQ 6.
>
> MJ: And this was on 8 October 1980, is that correct?
>
> ACC: Yes sir.
>
> MJ: Who was the person that you got the qualudes from?
>
> DC: Sir, in order to accept his guilty pleas, the defense feels that that information is not necessary. I was assigned to the case initially and was given the information that you are now seeking. I informed the accused that this matter might have to be brought up, okay, in court, and that I had a previous attorney client relationship with this person upstairs and that might disqualify me. So it was worked out that the government would not proceed on specification 6 concerning the sale of the qualudes which would result in not having me, or having a lawyer bring in this other individual to support Hauber's contention that there was an agency situation existing. The matter was remedied so that I could remain on the case, represent Hauber and therefore, since specification 6 is not going to be litigated, there is really no need to bring this matter up and it would result in not having me disqualified.
>
> MJ: I would just ask you some general questions Hauber. This individual that you obtained the qualudes from, was he a naval service member?
>
> ACC: Yes sir.
>
> MJ: Was he a petty officer or non-rated?
>
> ACC: He was a petty officer, sir.
>
> MJ: And he lives in BEQ barracks?
>
> ACC: Yes sir, barracks 6.
>
> MJ: He was a naval service member at the time you obtained the qualudes?
>
> ACC: Yes sir.

As indicated by defense counsel, specification 6, which alleged a drug sale, was not litigated. Appellant pled not guilty to that specification; the Government presented no evidence on it, and appellant was found not guilty of specification 6. Appellant was charged, however, in specifications 4 and 5 with possession and transfer of that same drug. He pled guilty to those two offenses and was found guilty in accordance with his pleas, which appears to render any advantage to appellant from the Government's non-pursuit of the sale specification illusory at best.[3] As a result of this treatment of

---

2. *Id.* at 434.

3. It is noted that the pretrial agreement negotiated by defense counsel did not require the Government to forego prosecution of specification 6 nor did it provide for any sentence limitation beyond the maximum authorized for a special court-martial. The sole benefit accruing to appellant from this agreement appears to be the convening authority's promise not to

specification 6, appellant was not required to identify his counsel's other client, who was a potential witness or possibly a co-accused. Presumably, this individual was never identified to authorities and, thus, not only was not called as a witness but also escaped being prosecuted, too. The defense counsel concluded that the Government's not proceeding on the sale specification removed any possibility of conflict of interest arising from his dual representation and the judge accepted that conclusion without pursuing the matter further as required by *United States v. Cahill, supra,* and *United States v. Davis, supra.* I am not prepared to draw that same conclusion, for to do so requires speculation as to all the facts involved and the possible advantages that might have accrued to appellant through a defense strategy that involved revealing this individual's identity.[4] Suffice it to say that appellant was entitled to be told of these possible advantages and his right to a counsel unencumbered by a conflicting obligation to another party, even if that obligation included only an effort to preserve the other client's anonymity.

The whole purpose of the procedure in *Cahill* and *Davis* is to make sure that appellant fully understands all the possible disadvantages flowing to him from his counsel's representation of someone else with a contrary interest in the matter at hand, and that the accused then makes a knowing personal decision to either continue with his counsel, despite any infirmities revealed, or to proceed with another counsel. That procedure not having been followed in this case, I am unable to say whether appellant has made a knowing waiver of his right to a defense counsel free of countervailing obligations. For that reason, I must dissent from the affirmation of this case by the majority. In so doing, I find it interesting to note in the record of trial the contrast between the judge's handling of this matter and a revelation by trial counsel that the prosecutor at some prior time, in a different capacity, had provided legal advice to appellant. Before finding that it was permissible for the trial counsel to continue in the case, the judge explained the matter to appellant and obtained his concurrence that the trial counsel could continue without it affecting any of appellant's rights.[5] It

refer the case to an investigation under Article 32, UCMJ, or recommend a general court-martial.

4. In this regard, it is noted that in an unsworn statement made in appellant's behalf by defense counsel it was brought out that appellant rejected an offer to become an informant for the Naval Investigative Service, despite an assurance "that consideration would be given to his efforts if he would assist them in the drug program." No indication is given as to whether appellant would have been required to identify his counsel's other client as part of such assistance or whether counsel provided any advice with respect to appellant's decision. There is also no indication whether any consideration was given by appellant or his counsel to seeking a more favorable pretrial agreement in return for providing such information as the identity of the counsel's client.

5. That colloquy in its entirety was as follows:
   MJ: The court will come to order.
   TC: Let the record reflect that all members who were present when the court recessed are again present in the court room.
   MJ: Trial counsel.
   TC: Yes sir, I believe there is one matter which should be addressed at this time prior to arraignment. It has come to trial coun-

sel's attention that Airman Hauber saw the trial counsel as a legal assistance client some months ago. At that time it was discussed whether Airman Hauber should seek a medical transfer because of some allergies. Problems which he was having—those problems led him to have some problems with the performance of his duties because of the nature of that job as an Air Traffic Controller. The government does not believe that he acquired any knowledge which might prejudice the accused in this case, however, would respectfully request that the military judge inquire as to whether that contact which trial counsel had with the accused would prejudice him in any way, in either in presenting his pleas to the court in preparing a successful court strategy and whether that would impinge upon his extenuation and mitigation case if that were necessary.
MJ: Airman Hauber, you were apprised of this matter during the recess, is that correct?
ACC: Yes sir.
MJ: And it is the court's understanding that you do recognize Lieutenant Wolensky and you do recall that you appeared at the Naval Legal Service Office Detachment in Lemoore, for legal assistance about the matter referred

is unfortunate that the military judge did not discern the need for such an inquiry with respect to appointed defense counsel.

to by Lieutenant Wolensky. And Lieutenant Wolensky did provide some service to you as Legal Assistance Officer, is that correct?

ACC: Yes sir.

MJ: You may remain seated while we go over this matter. Have you discussed this matter with your defense counsel?

ACC: Yes I have sir.

MJ: Do you feel that your previous professional relationship with the trial counsel, Lieutenant Wolensky, with regard to the legal assistance matter, will prejudice the defense of your case, either as to the findings or as to any case you may present in extenuation and mitigation if such is required?

ACC: No sir. I do not.

MJ: In other words, you are advising the court that you have no objection to Lieutenant Wolensky serving as the government prosecutor, even though he will be serving in an adverse position to your interests?

ACC: Yes sir.

MJ: Lieutenant Ozawa, you have discussed this matter with your client?

DC: Yes sir.

MJ: And you have discussed with him the ramifications of any possible, any possible adverse ramifications that might have come about because of your client's conversation with Lieutenant Wolensky over this legal assistance matter?

DC: Yes sir. There doesn't appear to be any possible ramifications.

MJ: Any possible adverse ramifications?

DC: Right.

MJ: Very well the matter is on record. The court does not feel that the government's representative as trial counsel, acting in that capacity, prejudices the rights of the accused at this court-martial. Trial counsel, is there anything further?

TC: No sir.